**UNITED STATES of America, Plaintiff,**

v.

**Gordon "Butch" EARLEY, Jr., Defendant.**

**Crim. No. 80–54.**

United States District Court, S. D. Iowa.

Jan. 8, 1981.

---

118

Roxanne Barton Conlin, U. S. Atty., Terry Wright, Asst. U. S. Atty., Robert J. Blink, Sp. Asst. U. S. Atty., Des Moines, Iowa, for plaintiff.

Frank A. Comito, John P. Roehrick, Des Moines, Iowa, for defendant.

### MEMORANDUM OPINION AND RULING DENYING MOTION FOR NEW TRIAL

VIETOR, District Judge.

At the conclusion of a four week trial, the jury found defendant guilty of bank burglary aggravated by killing two persons in violation of 18 U.S.C. § 2113(a) and (e). His motion for new trial is before the court.

Defendant asserts numerous grounds for a new trial, including his contention that the court erred in excluding polygraph evidence.

The government's principal witness was Merle Bennett, an accomplice of defendant in the commission of the crime, who testified pursuant to a plea agreement entered into between Bennett and the government. Evidence presented by defendant in an offer of proof made in open court on the 12th and 13th days of November 1980 may be summarized as follows. The government would not enter into a plea agreement with Bennett unless he took and passed a polygraph examination. On February 16, 1980,

the polygraph examination was administered to Bennett by William McCarthy, a polygraph examiner for the Des Moines, Iowa, Police Department. Officer McCarthy made a written report of his examination which concluded: "As a result of this polygraph examination, it is the opinion of this examiner that this subject is substantially telling the truth regarding the question at issue." The question at issue is stated in the report to be "whether or not Merle Bennett was being truthful when he denied having been the one who personally shot Dan and Dawn Kriegel." The plea agreement was entered into. At the offer of proof hearing Officer McCarthy testified that actually the physiological responses of Bennett to the questions asked during the polygraph examination were such that he was unable to reach a conclusion or opinion as to whether Bennett was truthful or untruthful. Another polygraphist who examined the record of the polygraph examination also testified that the results were such that it was not possible to reach a conclusion or opinion as to whether Bennett was truthful or untruthful.

■■■ The plea agreement was properly admitted into evidence for the purpose of impeaching the credibility of Bennett. Defendant argues that the taking of the polygraph examination and the results of the examination were an integral part of the plea agreement and therefore are admissible on the theory that the entire plea agreement is admissible for impeachment pur-

poses. Defendant cites no authority in support of his position and the court has been unable to find any. It is this court's conclusion that the taking of the polygraph examination and the results of the examination are not part of the plea agreement. The polygraph examination was merely the means by which the government prosecutors satisfied themselves that Bennett's version of the facts was substantially true before deciding to use him as a government witness. The prosecutors are entitled to use any appropriate means of satisfying themselves of the truthfulness of a witness, particularly one who is an accomplice of the defendant, before relying on and using his testimony. The means used by the government to do this does not become admissible evidence, whether or not the witness exacts from the government a charge or sentencing concession as a quid pro quo for his testimony, which he could otherwise withhold from the government on Fifth Amendment grounds.

Defendant also urges, as a theory distinct from his theory that the polygraph examination and results are an integral part of Bennett's plea agreement, that the taking of the polygraph examination and the polygraphists' testimony that they could not reach a conclusion or opinion as to Bennett's truthfulness or untruthfulness is admissible evidence under the holding of *United States v. Hart*, 344 F.Supp. 522 (E.D.N.Y.1971). I find the *Hart* decision unpersuasive,[1] and I conclude that the polygraph

---

1. In *Hart*, the court found a violation of the government's duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to disclose exculpatory evidence because it failed to disclose that its principal witness had taken a polygraph examination that indicated he was lying. This nondisclosure was discovered during the trial, and the court declared a mistrial. Prior to the second trial, the court held that defendants would be "entitled to inquire concerning any investigations made by the government which might have put it on notice that a government witness was untruthful." *United States v. Hart, supra*, 344 F.Supp. at 523. The court further stated: "The bearing of the lie detector test on Mr. Atkinson's credibility should be determined by the jury * * *." *Id.* at 524.

The *Hart* court considered the issue "primarily in the light of the government's duty under *Brady v. Maryland* * * *." *Id.* at 523. The court stated: "Under the *Brady* principle, the burden should be on the government to convince a jury that [the polygraph examination and result] was of no significance." *Id.* The court detailed the government's burden by stating:

Having requested that Mr. Atkinson submit to polygraph tests, and then rejected the conclusions of the tests, the government should be prepared to show (a) the prior experience with polygraph tests and with the particular testers which led the Bureau of Narcotics and Dangerous Drugs to have Leslie Atkinson submit to the tests; (b) the basis for the subsequent doubts about the validity of polygraph tests which led to the disregard of the

evidence was properly excluded under the authority of *United States v. Alexander*, 526 F.2d 161 (8th Cir. 1975), and under Fed.R.Evid. 702 and 608.

Valid reasons for excluding polygraph evidence are thoroughly articulated in *United States v. Alexander, supra*, and need not be reiterated in this memorandum opinion. In addition to the reasons set forth in *Alexander*, I am of the opinion that Fed.R.Evid. 702 and 608 also require exclusion of polygraph evidence.

In essence, polygraph evidence is opinion evidence of an expert witness, a polygraphist, as to whether or not another witness (in this case Bennett) spoke truthfully on a specific occasion (when that witness, during a polygraph examination, gave answers to questions substantially in accord with the testimony he later gave at the trial).

Fed.R.Evid. 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact *to understand the evidence or to determine a fact in issue*, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." (Emphasis supplied.)

■ I believe that "a fact in issue" is a reference to a material fact of the case and is not a reference to the issue of the credibility of a witness who testified to material facts.[2] "[U]nderstand the evidence" appears to be a reference to understanding the evidence relating to a material fact in issue and does not include the concept of understanding whether a person who testified spoke the truth. Thus, Rule 702 does not appear to be a rule permitting one witness to express his opinion, whether based on science or witchcraft, that another witness spoke the truth or spoke a false-

hood when that witness testified or on any other specific occasion when that witness spoke about the facts of the case. *See United States v. Alexander, supra*, 526 F.2d at 169.

Fed.R.Evid. 608(a) is even more clear on the issue of whether one witness may opine that another witness spoke truthfully or untruthfully on a *specific* occasion. That rule provides:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, *but subject to these limitations*: (1) the evidence may refer *only* to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise. [Emphasis supplied.]

■ A polygraphist expresses his opinion, but he expresses it as to whether the subject of the polygraph examination spoke truthfully or untruthfully on the specific occasion of the polygraph examination. The polygraphist does not express his opinion of the subject's "character for truthfulness or untruthfulness." Thus the opinion testimony of the polygraphist is not within the express limitation Rule 608(a) places on opinion testimony relative to the credibility of a witness. *See* 3 Weinstein's Evidence ¶ 608[03], at 608–19; ¶ 608[04], at 608–20.

The other grounds of defendant's motion for a new trial are also without merit, and the motion for new trial is denied.

results; and (c) any other relevant material concerning the tests which defendants may request from the government on their own behalf.
*Id.* at 524.

*Hart* is factually distinguishable from the instant case in two significant respects: (1) In the instant case the government made a timely *Brady* disclosure to defendant, and (2) in the instant case the polygraph results were incon-

clusive rather than indicating that Bennett was lying.

2. Whether a person lied on a specific occasion may, of course, be "a fact in issue" in some cases, such as a perjury prosecution and criminal and civil cases involving material allegations of false representations. This is not such a case.