**UNITED STATES of America, Appellee,**

v.

**Alister Henderson SIMON,
Defendant, Appellant.**

**No. 87–1511.**

United States Court of Appeals,
First Circuit.

Heard Dec. 10, 1987.

Decided March 25, 1988.

Frank D. Inserni, Hato Rey, P.R., by Appointment of the Court, for defendant, appellant.

Jose Gaztambide, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., and Warren Vazquez, Asst. U.S. Atty., Hato Rey, P.R., were on brief, for appellee.

Before COFFIN, BREYER and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

On December 31, 1986, federal customs officers in San Juan, Puerto Rico, with the help of a drug-sniffing dog, searched a British West Indies Airlines flight that had stopped briefly in San Juan enroute from Jamaica to Antigua. They found a package containing 55 pounds of marijuana. The package had a BWIA address sticker on it with the name and address in Antigua of defendant Alister Henderson Simon. Also printed on the box were the name "DR. K.S. BANDI, AMERICAN UNIVERSITY OF THE CARIBBEAN, PLYMOUTH, MONTSERRAT" and "DR. K.S. BANDI, U.W.I. [University of the West Indies], MONA CAMPUS, JAMAICA W.I." The federal agents learned that neither Simon nor Bandi was on the flight, but that Simon would be on the same flight the next day. When Simon arrived in Puerto Rico, the agents arrested him. He said that he was on his way to Antigua; that he had not known the box contained marijuana; that he had checked the package in as a favor to a man who claimed to be a passenger with overweight luggage and who had told him the package contained books. Simon added that he had gotten into a conversation with a woman at the check-in counter and had missed his original flight. A jury convicted him of unlawful possession of marijuana (with intent to distribute) and related drug offenses. 21 U.S.C. §§ 841(a)(1), 952(a), and 955 (1982 & Supp. IV 1986). He now appeals his conviction.

■ Simon argues that the district court should not have admitted evidence that in July 1980 a court in Antigua convicted him and a friend of cultivating marijuana. Simon concedes that prior convictions, inad-missible to show bad character or propensity to commit a crime, are nonetheless admissible to show, among other things, "intent, ... knowledge, ... or absence of mistake or accident." Fed.R.Evid. 404(b); *see United States v. Scelzo*, 810 F.2d 2 (1st Cir.1987); *United States v. Zeuli*, 725 F.2d 813 (1st Cir.1984). He also concedes that the trial court has considerable leeway in balancing any legitimate probative value that such evidence may have against its potential prejudicial effect. *United States v. Rivera Rodriguez*, 808 F.2d 886, 888 (1st Cir.1986); *United States v. Medina*, 761 F.2d 12, 15 (1st Cir.1985). He says, however, that here the trial court, in admitting the prior conviction, went beyond the limits of its legal authority. While we find the issue a close one, ultimately we do not agree with appellant.

The trial court has the legal power under Rule 404(b) to engage in probative-value-vs.-prejudice balancing because, technically speaking, the evidence is legitimately relevant. The trial court said that it found the prior conviction "relevant to prove motive, ... intent, preparation, plan, knowledge, identity, and, in this particular case, because of the defense that has been announced, absence of mistake or accident." The record reveals several ways in which this may be so.

First, the jury might have reasoned that the conviction suggested that Simon and his associates used marijuana in Antigua and that those who use marijuana in Antigua are more likely to wish to bring marijuana to Antigua than those who do not. This chain of reasoning indicates that the prior conviction was to some degree relevant to the defendant's intent. *See, e.g., United States v. Francesco*, 725 F.2d 817, 822 (1st Cir.1984) (prior conviction for selling cocaine admissible to show intent to possess and distribute cocaine); *United States v. Cepeda Penes*, 577 F.2d 754, 760–61 (1st Cir.1978) (evidence that customs officials found marijuana seed in defendant's luggage nine days prior to events leading to prosecution for possessing marijuana with intent to distribute admissible to show intent). *But see United States v.*

*Masters,* 450 F.2d 866, 867 (9th Cir.1971) (marijuana *use* not significantly probative of intent to import).

Second, the jury might have taken note of a letter that customs officers took from the defendant when they arrested him, a letter that apparently he was carrying for another person. The letter said in part "I've got a plan to use some 16–track tape as a smuggling machine.... [Y]ou could post them to me and I will post them back full of the mystic scent." The jury might have thought that one with a background involving marijuana cultivation was more likely than one without such a background to have understood these terms as referring to drug smuggling and therefore to have been involved in drug smuggling at the time. The conviction was thereby relevant to knowledge, intent, and absence of accident or mistake.

Third, the jury might have noted that the customs officer testified that the defendant said that the man who had asked him to take the package told him it contained books. At that time, the defendant (according to the officer) said, "in my mind I was afraid there was marijuana in this box because this is Jamaica and everyone knows there is a lot of grass in Jamaica." The jury might have reasoned that one ·thinking this who *also* has a background involving marijuana cultivation is not likely to believe that a box containing marijuana feels like (or weighs about the same as) a comparatively sized box of books, and therefore would have been more suspicious of the man's story (had there been such a man). In this respect the evidence is relevant to defendant's knowledge and intent as well as absence of mistake or accident. *See, e.g., United States v. Moccia,* 681 F.2d 61, 63 (1st Cir.1982) (prior conviction admissible where government "sought to have the jury infer that one who lives on a farm with marijuana in the freezer room and under the chicken coop and has a prior possession conviction is more likely to *know* about the presence of marijuana than one who lives on such a farm and does not have a past possession conviction" (emphasis original)); *United States v. Sinn,* 622 F.2d 415 (9th Cir.1980) (evidence that defendant had been in possession of cocaine five years earlier admissible to show knowledge where defendant claimed he was unaware drugs were in his camera case).

Finally, the jury may have concluded that persons who have *grown* marijuana on a farm are not mere users, but are likely to have an intent to *distribute* it as well. *Cf. United States v. Mehrmanesh,* 689 F.2d 822, 832 (9th Cir.1982) (evidence of possession of "large amounts" of drugs probative of intent to *distribute*). Since intent to distribute is an element of the offense under 21 U.S.C. § 841(a)(1), this evidence would be admissible.

Defendant argues that the probative value of all these inferences is slight in light of the fact that he admitted he was a Rastafarian and told the jury that Rastafarians use marijuana as part of their religion. Since he admitted using marijuana, he asks, what did the past conviction add? The answer to this question is that he did not admit to familiarity with marijuana until *after* the prior conviction was admitted. The government asked the judge to admit the evidence at the close of the government's case. At that time the defendant did *not* tell the court that he would admit use of, or familiarity with, marijuana. To the contrary, defendant's counsel specifically told the court that he would rest his defense "basically on the lack of intent." He also suggested that if the conviction were not admitted, he might make a Rule 29 motion for a directed verdict of acquittal on the ground that the government had not introduced enough evidence to show intent:

> The Court: Let me ask you this. If a motion for judgment for acquittal under Rule 29 would be presented now, would you say that I had to deny that motion?
>
> Defense Counsel: Yes.... I would base my Rule 29 motion ... on lack of intent.

As far as we can (or the district court could) tell, the defendant may not have decided to concede his familiarity with marijuana until after the court admitted the conviction.

Defendant points to a Second Circuit ruling that, when the government seeks to introduce a past criminal act to show knowledge or intent, "the offer of similar acts evidence should await the conclusion of the defendant's case and should be aimed at a specifically identified issue." *United States v. Figueroa,* 618 F.2d 934, 939 (2nd Cir.1980). The Second Circuit has also held, however, that this timing rule does *not* apply when "it is apparent that intent will be in dispute." *United States v. Caputo,* 808 F.2d 963, 968 (2nd Cir.1987); *accord United States v. Reed,* 639 F.2d 896, 906–07 (2nd Cir.1981). In such a case, the "government may introduce such evidence during its case-in-chief, rather than waiting until the conclusion of the defendant's case." *Caputo,* 808 F.2d at 968; *accord Reed,* 639 F.2d at 906–07. Since this case falls within the Second Circuit's exception, we need not decide whether to adopt the Second Circuit's rule. In sum, the judge lawfully could consider whether to admit the evidence at the close of the government's case, weighing its probative value against its prejudicial effect.

Of course, the fact that the trial court had the legal power, at the close of the government's case, to balance "probative value" against possible "prejudice," does not show that it balanced correctly. Indeed, we are uncertain whether the court gave sufficient weight to the very real risk that the prior conviction would lead the jury to conclude, simply, that defendant had a bad character, to reason that "if he did it before, he will do it again," or even to punish him again for his past offense. Were we striking the balance ourselves, we might well strike it differently. Nonetheless, it is clear in this circuit that we will give the district court considerable leeway on this matter. *United States v. Crocker,* 788 F.2d 802, 804 (1st Cir.1986); *United States v. Zeuli,* 725 F.2d 813, 816 (1st Cir. 1984); *United States v. Eatherton,* 519 F.2d 603, 611 (1st Cir.1975). We are also aware of the several different ways in which the evidence was legitimately relevant, the fact that the major defense was 'lack of knowledge,' and that there was talk of insufficient government evidence at

the time the court decided the question of admissibility. Under these circumstances, we cannot say the decision was outside the scope of the court's lawful authority.

 Defendant raises another matter. He asked the district court to take "judicial notice" of the facts that there exists a university called the University of the West Indies in Jamaica and that Rastafarians use marijuana as part of their religion. The court refused and defendant appeals.

If asked to do so and "supplied with the necessary information," a court must take judicial notice of "adjudicative facts" "generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Fed.R.Evid. 201(a), (b), and (d). We do not see how these facts meet the rule's standard. The only "sources" to which counsel pointed to prove the university's existence were a telephone number and an address, which he asked the court to believe belonged to the university. Even if he had offered the actual phone book and not just the numbers, he could, at most, only have required the court to take notice of the fact that the university's phone number and address were listed, not that the university existed. *See* 21 C. Wright & K. Graham, *Federal Practice and Procedure* § 5104 at 483 & n. 4 (1977). With respect to his "religious use" claim, counsel offered only a 1967 dissertation and a 1960 research paper—hardly sources "whose accuracy cannot reasonably be questioned." Indeed, at least one more recent source suggests that the smoking of marijuana, while prevalent among Rastafarians, might not be a tenet of the religion. *See* 2 *The Encyclopedia of Religion* 95–97 (1987). In any event, neither of these facts had any significant probative value in the context of the trial.

For these reasons the judgment of the district court is

*Affirmed.*

TORRUELLA, Circuit Judge (concurring).

I am concerned by the frequency with which convictions are influenced in this cir-

cuit by the marginally admissible evidence of the prior bad acts of those charged. The presentation of such evidence is condoned if not encouraged by an almost unbroken line of decisions by this court. *United States v. Giorgi,* 840 F.2d 1022 (1st Cir.1988); *United States v. Reverón–Martínez,* 836 F.2d 684 (1st Cir.1988); *United States v. Currier,* 836 F.2d 11 (1st Cir.1987); *United States v. Ingraham,* 832 F.2d 229 (1st Cir.1987); *United States v. Lau,* 828 F.2d 871 (1st Cir.1987); *United States v. González–Sánchez,* 825 F.2d 572 (1st Cir.1987); *United States v. Andiarena,* 823 F.2d 673 (1st Cir.1987); *United States v. Molinares Charris,* 822 F.2d 1213 (1st Cir.1987); *United States v. Currier,* 821 F.2d 52 (1st Cir.1987); *United States v. Bank of New England,* 821 F.2d 844 (1st Cir.1987); *United States v. Munson,* 819 F.2d 337 (1st Cir.1987); *United States v. Cintolo,* 818 F.2d 980 (1st Cir.1987); *United States v. Masse,* 816 F.2d 805 (1st Cir. 1987); *United States v. Moreno Morales,* 815 F.2d 725 (1st Cir.1987); *United States v. Scelzo,* 810 F.2d 2 (1st Cir.1987); *United States v. Mazza,* 792 F.2d 1210 (1st Cir. 1986); *United States v. Crocker,* 788 F.2d 802 (1st Cir.1986). Because of this trend, the prohibition against the introduction of "[e]vidence of other crimes ... to prove the character of a person in order to show action in conformity therewith," mandated by Fed.R.Evid. 404(b) as well as due process, *Lovely v. United States,* 169 F.2d 386, 389 (4th 1948) ("[The rule] arises out of the fundamental demand for justice and fairness which lies at the basis of our jurisprudence.") has become the exception rather than the rule, a classical case of the tail wagging the dog. Almost any excuse or far-fetched theory is made to fit within that Rule's truly exceptional language, *i.e.,* that such evidence is admissible only as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See* Fed.R.Evid. 404(b).

Although after much reflection I have decided to join in the affirmance of this "close" issue in this case, *ante* at 553, I am of the view that this court should in future cases more strictly scrutinize the proliferation of this alarming, and in most cases, totally unnecessary practice.