UNITED STATES of America, Appellee,

v.

Steven LYNN, Defendant, Appellant.

No. 87–2114.

United States Court of Appeals,
First Circuit.

Heard May 5, 1988.
Decided Sept. 13, 1988.

Newport, Rhode Island. It involved an international smuggling network and illicit financing arrangements. Lynn was convicted of distributing a large quantity of the marijuana that arrived.

The government's case consisted largely of the testimony of cooperating co-conspirators who were already serving time for their participation in the operation. The testimony of only two of the witnesses, Peter Bryon and Mitchell Fried, directly implicated Lynn as a distributor for the conspiracy.

Fried, who recruited others and served as an offloader for the boat full of marijuana that arrived in New England, testified that he attended three progress meetings at the Grand Hyatt Hotel in New York along with Lynn and Jonathan Cooper, with whom Lynn was indicted and from whom his case was ultimately severed. Fried asserted he understood Lynn and Cooper were to be the New York distributors and stated as well that Lynn came up with the selling price for the marijuana. Fried also testified that approximately two weeks after the offload, he met Lynn at the condominium of Chris Murray, another conspirator, where Lynn gave him four suitcases to deliver to Murray's other residence. Although he never opened them, Fried was later told the suitcases were full of money.

Peter Bryon, characterized by the defense as the brains behind the endeavor, directly implicated Lynn in the conspiracy. Besides recounting the history of the undertaking and detailing his own role in charge of securing the vessels and arranging financing for the smuggling operation, Bryon testified to Lynn's presence and participation at several organizational and progress meetings.

In addition to co-conspirator witnesses,[1] the government introduced evidence of the defendant's 1974 arrest and subsequent conviction for possession of marijuana with

William J. Genego, University of Southern California Law Center, Los Angeles, Cal., with whom C. Leonard O'Brien, Providence, R.I., was on brief for appellant.

Kenneth P. Madden, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before BREYER and TORRUELLA, Circuit Judges, and FUSTE,* District Judge.

FUSTE, District Judge.

Appellant Steven Lynn was convicted of conspiring to import and to possess with the intent to distribute marijuana and hashish, and of importation and possession of marijuana, in violation of 21 U.S.C. secs. 841(a)(1), 846, 952(a)(1), and 963. On appeal, Lynn alleges several reversible errors. For the reasons that follow, we reverse Lynn's conviction and remand his case for a new trial.

## I.

Lynn, tried in the fall of 1985, was charged as a New York distributor in a conspiracy to transport millions of dollars worth of marijuana from Thailand and hashish from Pakistan for sale in the United States. The endeavor culminated in October, 1981 with the arrival and offload of four hundred 40–pound duffle bags of marijuana at the Mount Hope Marina House in

---

* Of the District of Puerto Rico, sitting by designation.

1. Another conspirator testified that he had been introduced to Lynn in New York, and Murray's girlfriend testified to meeting Lynn at one of the Grand Hyatt meetings.

the intent to distribute. After the court admitted the judgment and commitment order, Drug Enforcement Administration Special Agent Andrew Pucher took the stand to expand on the details of the earlier transaction. Surprisingly, he failed to recall the details of Lynn's prior offense. Pursuant to Fed.R.Evid. 803(5), the Past Recollection Recorded exception to the hearsay rule, the court allowed the prosecutor to read to the jury portions of the agent's investigative reports.

Lynn's defense remained throughout the trial that the government witnesses were lying about his involvement to receive lenient treatment for their own offenses. He claims now that the district court erred during trial first by impermissibly circumscribing the cross-examination of Bryon and next by admitting Lynn's prior conviction and the testimony of Pucher. After addressing the viability of appellant's claims, we shall assess the impact of any violation on Lynn's conviction.

## II.

During cross-examination of Bryon, Lynn's attorney sought to elicit the terms and conditions of his plea agreement with the government.[2] Part of the agreement required that Bryon submit to a polygraph examination and further provided that Bryon's "failure to take or to successfully complete such examination may result in the nullification of this agreement at the sole discretion of the United States Attorney of the Eastern District of North Carolina." Bryon evinced his understanding of this arrangement when, in answering Lynn's attorney's only permitted question about the requirement he announced, "I had to pass a polygraph test."

Bryon took the test twice, and some of his answers, concerning assets he may have failed to disclose to the FBI and some details of other smuggling operations, were deemed "inconclusive" by the examiner. At trial, the defense sought to impeach Bryon by implying before the jury that he had not "successfully completed" the test and therefore had reason to continue to please the government by lying about Lynn's participation.

The district court, however, cut off all questioning about the polygraph test and announced to the jury that the results of such tests were inherently unreliable. Inquiry about Bryon's polygraph exam was forbidden "in any way, form, shape or manner" and Lynn was thus foreclosed from exploring Bryon's possible bias in this respect.

It is well established in this circuit and elsewhere that the "Sixth Amendment right of a criminal defendant 'to be confronted with the witnesses against him' includes the right to impeach credibility through cross-examination." *U.S. v. Tracey,* 675 F.2d 433, 437 (1st Cir.1982), *citing Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974). Moreover, because bias is "always relevant as discrediting the witness and affecting the weight of his testimony," *Tracey,* 675 F.2d at 437, *quoting Davis,* 415 U.S. at 316, 94 S.Ct. at 1110, a defendant is entitled to explore a witness' motivation for testifying.[3]

It is equally well established, however, that trial judges possess the discretion to

---

**2.** With that agreement, Bryon pled guilty to drug offenses in Rhode Island and North Carolina and to charges of bank fraud in Illinois.

**3.** Bias has been defined as "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *U.S. v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984). Cross-examination as to bias is therefore always relevant since "[a] successful showing of bias on the part of a witness would have tendency to make the facts to which he testified less probable in the eyes of the jury

than it would be without such testimony." *Id.,* at 51, 105 S.Ct. at 468.

Exploring the potential of bias can be distinguished from the other major function of cross-examination—impeaching the credibility of witnesses through exposing prior incidents or actions reflecting a disposition to lie. *Niziolek v. Ashe,* 694 F.2d 282, 289 (1st Cir.1982). In other words, we can draw a line between prior conduct and behavior suggesting a witness may be lying (the credibility factor) and a current continuing motivation to testify falsely (the bias factor).

limit or even totally prohibit cross-examination into certain areas. *E.g., Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *U.S. v. Silvestri,* 790 F.2d 186, 190–91 (1st Cir.), *cert. denied,* 479 U.S. 857, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986); *U.S. v. Barrett,* 766 F.2d 609, 614 (1st Cir.), *cert. denied,* 474 U.S. 923, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985); *Chipman v. Mercer,* 628 F.2d 528, 531 (9th Cir.1980). That discretion, however, "becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant." *E.g., Tracey,* 675 F.2d at 437; *U.S. v. Fortes,* 619 F.2d 108, 118 (1st Cir.1980); *Niziolek,* 694 F.2d at 289; *U.S. v. Jarabek,* 726 F.2d 889, 902 (1st Cir.1984); *Chipman,* 628 F.2d at 530.[4] Toward this end, the district court must ensure that the jury is provided with "sufficient information concerning formative events to make a 'discriminating appraisal' of a witness's motives and bias." *U.S. v. Twomey,* 806 F.2d 1136, 1140 (1st Cir.1986), *quoting U.S. v. Campbell,* 426 F.2d 547, 550 (2nd Cir.1970).

■ Finally, especially broad latitude should be afforded the questioning of an accomplice now acting as a government witness which concerns "the nature of any agreement he has with the government or any expectation or hope that he will be treated leniently in exchange for his cooperation." *Barrett,* 766 F.2d at 614. *See also U.S. v. Onori,* 535 F.2d 938, 945 (5th Cir.1976); *Burr v. Sullivan,* 618 F.2d 583, 587 (9th Cir.1980); *U.S. v. Mayer,* 556 F.2d 245, 248 (5th Cir.1977). Cross-examination of this type might not only impeach the credibility of the witness' prior statements with the suggestion that he lied before to obtain a good deal with the government; it could also reveal any present and continuing reasons for the witness to fabricate his testimony in return for future prosecutorial favors.[5]

■ In this case, we are faced with the district court's complete foreclosure of cross-examination on the issue of Bryon's polygraph examination. There is no question of the relevance of the intended area of inquiry—Bryon's motivation to lie to continue to curry favor with the government. Moreover, polygraph results are admissible for reasons other than proving the substance contained. *U.S. v. Estrada–Lucas,* 651 F.2d 1261, 1264 (9th Cir.1980) (admissible for purposes of impeachment); *U.S. v. Black,* 684 F.2d 481, 484 (7th Cir.), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 463, 74 L.Ed.2d 613 (1982) (admissibility a matter of district court discretion); *see also U.S. v. Earley,* 505 F.Supp. 117 (S.D. Iowa), *aff'd,* 657 F.2d 195 (8th Cir.1981) (polygraph results held not a part of the plea agreement and for that reason inadmissible). Finally, we cannot ignore the government's tactic of drafting the plea agreement with the polygraph requirement clause, revealing the entire agreement to the jury (and thereby implying the witness' motivation to tell the truth), then objecting to defense attempts to expose the full implications of the clause. *See e.g., United States v. Brown,* 720 F.2d 1059, 1073 (9th Cir.1983).

This particular area of Bryon's potential bias had not yet been fully explored by the defense. While the cross-examination of Bryon was extensive, there were relatively few questions concerning Bryon's continuing reasons to lie to please the government. Defense counsel elicited the details of Bryon's many drug smuggling operations and of his dealings with his associates in crime, but cross-examination on the foreclosed topic may have presented the only concrete example of the hold the government might still have had over the witness.[6]

---

**4.** District court discretion rests ultimately on the ubiquitous Fed.R.Evid. 403 balance:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**5.** A good example of this second motivation is any outstanding charge against the witness, or even, as may have been the case here, any assets that may still be subject to forfeiture.

**6.** During the first of the two occasions defense counsel brought up the terms of Bryon's plea agreement, he elicited the fact that Bryon was

We find that by cutting off all cross-examination into a relevant and not fully explored area, the district court abused its discretion. The constitutional right to confront and cross-examine witnesses was impaired.[7] *Van Arsdall,* 106 S.Ct. at 1435; *U.S. v. Kaplan,* 832 F.2d 676, 684 (1st Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988). As the ensuing analysis indicates, this error, seen in the context of appellant's other claimed procedural flaws, had a compounded and unquestionably prejudicial effect.

### III.

■ Lynn's second claim of error concerns the admission in evidence of his prior marijuana conviction under Fed.R.Evid. 403 and 404(b). At the conclusion of Bryon's testimony, and after hearing argument from both parties, the court granted the government's request to do so. The prosecutor had informed the court that after submitting in evidence the judgment and commitment order, the undercover agent who arrested Lynn would take the stand and recount the details of the earlier transaction. Instead, when Special Agent Pucher stated he could not remember exactly what had transpired, the reports he made at the time were read to the jury.[8] We find that the district court incorrectly applied the standard for evaluating the admissibility of evidence about prior bad acts of a defendant, especially by ruling that the DEA investigative reports could be read aloud, giving the defendant virtually no opportunity for cross-examination. Here, once again, the balance required by Rule 403 was not observed. The danger of unfair prejudice outweighed the probative value of the recorded recollection material admitted in tandem with the prior conviction.

Rule 404(b) codifies the common law prohibition against the admission of propensity evidence—that is, evidence presented to encourage the inference that because the defendant committed a crime once before, he is the type of person to commit the crime currently charged.[9] *E.g., U.S. v. Morris,* 700 F.2d 427, 431 (1st Cir.), *cert. denied sub nom Graham v. U.S.,* 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983); *U.S. v. Moccia,* 681 F.2d 61, 63 (1st Cir. 1982). Evidence of prior bad conduct is, however, often admitted for other relevant and legitimate reasons not intended to reflect upon the character of the accused. This circuit has provided a clear framework for a two-step analysis to determine whether the proposed other crimes evidence is admissible:

> First, the trial court must determine that the evidence has some "special" relevance; that is, whether the evidence is

7. Fed.R.Evid. 403 requires the district court to be on constant guard in balancing the probative value of relevant evidence, and the danger of unfair prejudice. Here, no explicit or implicit Rule 403 balance was performed. Although the district court announced first to the attorneys and then to the jury that polygraph results were inherently unreliable, no mention was made of their potential probative value, nor were any intermediate solutions considered, such as permitting questioning on the results without actually admitting them in evidence.

8. Fed.R.Evid. 803(5) reads:
> **Recorded recollection.** A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

9. Fed.R.Evid. 404(b) reads:
> **Other crimes, wrongs or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

sentenced pursuant to 18 U.S.C. § 4205(b)(2), rendering him eligible for parole at any time, even before one-third of his sentence would be completed. That area of inquiry however, primarily touched upon Bryon's motivations to have lied before in order to obtain a beneficial sentence, rather than any continuing reason to give false testimony. This is especially true since the prosecutors involved had already written letters to the parole commission specifying their recommendation for Bryon's release.

offered to establish some material issue, such as intent or knowledge or is offered solely, and impermissibly, to establish the defendant's propensity for crime. Second, the trial court must balance the special probative value of the evidence against the danger of unfair prejudice to the defendant, using the considerations underlying [Fed.R.Evid.] 403.

*U.S. v. González–Sánchez*, 825 F.2d 572, 579–80 (1st Cir.), *cert. denied sub nom Latorre v. U.S.*, — U.S. —, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). *See also Moccia*, 681 F.2d at 63; *U.S. v. Kadouh*, 768 F.2d 20, 21 (1st Cir.1985); *U.S. v. Rivera–Medina*, 845 F.2d 12, 15–16 (1st Cir.1988); *U.S. v. Andiarena*, 823 F.2d 673, 678 (1st Cir.1987).

We have difficulty with the district court's determination of the probativeness of the other crimes evidence in the context of this case. While the court found that the previous conviction was relevant either to the existence of a common scheme, or to the defendant's intent to participate in the Thailand/Rhode Island conspiracy, we are unable to reach the same conclusion.

There is nothing to suggest that Lynn's previous offense "leads in a progression," as the district court contended, to his participation in the 1980–81 conspiracy. No evidence indicates a continuing or connected scheme of marijuana importation on the part of the defendant. The participants in both events were entirely different; indeed, it is entirely unclear if anyone besides the defendant was involved in the

first transaction. *E.g., Andiarena*, 823 F.2d at 677–78 (evidence of defendant's participation with same individuals in prior cocaine network admissible). Moreover, it is hard to discern a common non-propensity thread connecting Lynn's sale of 100 pounds of marijuana to undercover agent Pucher and an international conspiracy to ship millions of dollars worth of marijuana from the Far East to the United States.[10] Finally, the fact that the prior conviction concerned events that took place six years before the instant offense suggests even more strongly that the two acts were unrelated but for involvement with the same illicit substance. *E.g., González–Sánchez*, 825 F.2d at 581–82. Given the dissimilarities between the two episodes, we cannot uphold the district court's finding that the prior crimes evidence was probative of a common plan or scheme. *See Rivera–Medina*, 845 F.2d at 16. *Cf., U.S. v. Mann*, 590 F.2d 361, 369–70 (1st Cir.1978) (evidence excluded because only coincidental, therefore not probative of common scheme, and highly prejudicial).

The district court determination rested additionally on the link between the prior crime and the defendant's intent.[11] Appellant argues that the admission of his previous conviction was error since his intent was not in issue in this case. The defense was always conducted, he claims, not by trying to persuade the jury that he joined the conspiracy with an innocent state of mind or that he mistakenly interpreted the purpose of the operation and the reasons

---

**10.** Pucher's reports stated Lynn indicated he could arrange with his associates for more of the same on a regular basis. However, Lynn's connections were then supposed to be Colombian and Mexican and, more importantly, none of that was proven since he pled guilty to the single sale to Pucher. *Cf. United States v. Francisco Flores Pérez*, 849 F.2d 1, 7 (1st Cir.1988) (pending state charges that did not require proof of criminal intent not admissible to show intent in charged crime). The district court's evaluation of probativeness was unquestionably influenced by these details, since the judge drew connections between two international smuggling conspiracies. However, the admission in evidence of the unrecollected reports of the agent served primarily to highlight the prejudice, and not the relevance, of the previous incident.

**11.** The "laundry list" of admissible purposes for evidence of prior bad acts is not exhaustive. J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 404[08], at 404–57. It is sufficient only that there be some non-propensity purpose for its admission. *Moccia*, 681 F.2d at 63. In this instance, the court made its findings to the attorneys and the jury on the record and the prosecutor argued the common scheme and intent rationales to the jury at the close of his case. Indeed, we can propose no other probative value for the admission of the conviction—for example, that it makes the existence of a conspiracy more probable—and therefore confine our review to the rationales provided below.

for the meetings, but rather that the government witnesses were simply lying about his participation in the first place. The government responds that since intent is always an element to be proven in a conspiracy case, the use of the prior bad acts evidence was appropriate.

Neither party addresses the crux of the 404(b) probativeness analysis. As we have stated, the prior bad acts must have some "special" relevance to something other than propensity—in this case the intent of Lynn to participate in the conspiracy. In other words, there must be some articulable inference for the jury to draw from the previous offense other than that the defendant had the bad character and therefore more probably had the intent to commit the crime he is now charged with.[12] With these considerations at hand, the probative worth of Lynn's conviction toward proving his intent to commit the instant offense is difficult to conceptualize.[13] The states of mind of someone who consummated a street sale to an undercover agent and one who participated in an international smuggling conspiracy are connected primarily by the fact that both engage in criminal enterprises involving drugs. The

ordinary inference here would seem very close to the inference the Rule was designed to avoid.[14] Any non-propensity thread is attenuated by the fact that the previous crime took place six years before and involved different participants. *See U.S. v. Crocker*, 788 F.2d 802, 804 (1st Cir.1986) (prior criminal involvement with identical co-conspirator admissible because probative of intent in charged crime). *See also Rivera–Medina*, 845 F.2d at 16; *Flores Pèrez*, at 6 (and cases there cited).

The questionable probative value of the evidence was compounded by the fact that the government would have succeeded in proving intent should the jury believe the testimony of Fried and Bryon, rendering negligible their need to show intent by the prior bad acts.[15] In this sense, the instant case is distinguishable from *U.S. v. Simon*, 842 F.2d 552 (1st Cir.1988), where, in addition to defendant having placed knowledge in issue, "there was talk of insufficient government evidence at the time the court decided the question of admissibility." 842 F.2d at 555. The question of Lynn's participation and the corresponding determination of his intent necessarily rose or fell on

---

**12.** Weinstein notes, "Assuming . . . that intent is viewed by the court as a material issue, the profferor of the evidence must, in addition, convince the court that the other crimes evidence alters the probability of the defendant's having the requisite state of mind termed intent." J. Weinstein & M. Berger, *supra,* ¶ 404[12], at 404–84.

**13.** This circuit has held that without impermissibly reflecting upon the propensity of the accused, previous marijuana use could increase the probability of a later intent to distribute marijuana, specifically when the main defense was lack of knowledge, *U.S. v. Simon*, 842 F.2d 552, 553 (1st Cir.1988), and that a past conviction for possession coupled with the presence of marijuana in the defendant's home could be indicative of a current intent to possess and distribute, *Moccia*, 681 F.2d at 63. Our opinion here does not undermine those decisions, but instead highlights a corollary of those findings—that admission is not warranted when, in the context of the government's case and appellant's defense the relevance is minimal and the tendency to draw the propensity inference great. *Simon*, 842 F.2d at 555; *Flores Pèrez*, at 7.

**14.** Again, we are mindful of similarities between Lynn's purported involvement in regular and

substantial marijuana importation, present in the Pucher reports. Those unsupported allegations have little relevance to intent and, moreover, we cannot countenance the prejudice of admitting those details in evidence.

**15.** This circuit has maintained that intent is in issue when it is an element of the crime charged, regardless of the defense presented. *E.g., Rivera–Solá*, 713 F.2d 866, 871 (1st Cir. 1983); *U.S. v. Zeuli*, 725 F.2d 813, 816 (1st Cir.1984). We have found no case echoing the Ninth Circuit's pronouncement that intent is not in issue when it is "normally . . . inferred from the criminal act, if proven", *U.S. v. Ring*, 513 F.2d 1001, 1007 (6th Cir.1975). While we do not undermine the government's substantial burden of proof, we do note that in this instance, "intent, while technically at issue, [was] not really in dispute", *U.S. v. Benedetto*, 571 F.2d 1246, 1249 (2nd Cir.1978), greatly reducing any need for the jury to know of the previous conviction. In addition, the district court could have deferred a determination on the admissibility of the prior conviction until after the defense presented its case, since it would then have been in a better position to evaluate the government's need for the evidence. *Simon*, 842 F.2d at 555.

whether the jury believed Fried and Bryon. Use of the prior conviction served primarily to emphasize Lynn's bad character rather than his state of mind to commit the charged crime.[16]

Moving to the second and final step in the analysis, in addition to finding that "the relationship between [the] prior bad act and the charged crime is attenuated and of questionable relevance to [the defendant's] intent to commit the charged crime," *Flores Pèrez*, at 7, and that the need for such evidence was minimal, we hold that the effect of allowing the jury to know of the conviction was prohibitively prejudicial. Lynn was directly implicated only by the testimony of Bryon and Fried—testimony which, like the rest of the government's case, primarily concerned the details of the rest of the conspiracy. The jury might well have concluded they were lying about Lynn's participation, possibly to remain in the good graces of the government, but for the impermissible inference about Lynn's character encouraged by the evidence of his prior crime.

The prosecution added to the prejudice by placing Special Agent Pucher on the stand, eliciting his lack of memory, then reading his investigatory reports.[17] It is especially distressing that appellant could not, precisely because of the vagaries of the evidentiary rule permitting the admission of the reports, cross-examine the agent on the reliability of the information. In this case, the prosecutor's move presented Lynn with the Hobson's choice of either ignoring the information alleged in the reports or attempting to discredit details admittedly forgotten by the witness and, by doing so, stressing the prior conviction in

front of the jury. The net effect of the manner in which appellant's prior conviction was presented was unquestionably and unfairly prejudicial.

## IV.

■ Abuse of discretion by a district court does not automatically require reversal. However, where there is constitutional error, appellate courts must be convinced beyond a reasonable doubt that the errors did not contribute to the guilty verdict; otherwise the defendant is entitled to a retrial. *Satterwhite v. Texas*, — U.S. ——, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988), *citing Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Kaplan*, 832 F.2d at 685. In other words, if the jury would have convicted Lynn whether or not they knew of Bryon's polygraph result and Lynn's previous conviction, the verdict will stand.

Not only was Lynn prohibited from fully exploring the possible bias of the witness Bryon, but his defense strategy of attacking the credibility of the government witnesses against him was further undermined by the unfairly prejudicial impact of his former conviction. Indeed, it is likely that the combination of errors made the jury more likely to believe the contentions of Bryon and Fried. They may have told the truth, but a review of the record indicates that the case against Lynn was hardly "overwhelming", *U.S. v. Bosch*, 584 F.2d 1113, 1118 (1st Cir.1978); *see also Van Arsdall*, 106 S.Ct. at 1438. Acquittal would certainly have been within the realm of possibility had the jury been exposed to complete cross-examination of Bryon and not been exposed to the former conviction.

---

**16.** Evidence of a defendant's prior crimes may be used to corroborate the testimony of other witnesses. *U.S. v. O'Connor*, 580 F.2d 38, 43 (2nd Cir.1978). The court below noted that the prior conviction jibed with testimony by Bryon that Lynn expressed concern about security, thereby making the evidence probative of intent. However, that minimal value leads us to conclude, as did the *O'Connor* court, that the former conviction failed to corroborate "consequential testimony except insofar as it tended to show that appellant was a bad man likely to have committed the crimes charged in the indictment ..." *Id.* In addition, the prejudicial

impact of the evidence would not justify admission simply for corroborative purposes.

**17.** In trial practice, attorneys make decisions about what evidence to present before entering the courtroom. It is hard to believe Pucher's failure to recall became evident after he took the stand. As we see it, his pretrial interview would have disclosed his degree of recollection. Calling him as a witness to lay the foundation for the admissibility of Rule 803(5) material was poorly-crafted overkill.

The errors not being harmless beyond a reasonable doubt, appellant is entitled to a new trial.[18]

## V.

Lastly, we believe this case shall be assigned to a different judge on remand. Our purpose is to prevent even the appearance of injustice and to assure resolution of the many difficult issues it presents by a judge devoid of preconceptions arising out of the first trial. *See Maldonado Santiago v. Vázquez Garcia*, 821 F.2d 822, 832 (1st Cir.1987); *O'Shea v. United States*, 491 F.2d 774, 779 (1st Cir.1979).

## VI.

The verdict of the jury is set aside, the judgment of the district court is vacated and the cause is remanded for a new trial before a different judge. The Motion for Bail Pending Appeal now before us should be renewed before the district court, which can better evaluate the merits of that claim.

---

**18.** Our determination that this combination of violations mandates reversal means we need not consider the other claim of error—that the judge should have punished purported misconduct by the government in connection with Fried's behavior before trial.