UNITED STATES of America

v.

**Edward MacENTEE and Willis Wareham.**

**Crim. A. No. 88–514.**

United States District Court, E.D. Pennsylvania.

May 30, 1989.

Robert E. Goldman, Asst. U.S. Atty., Philadelphia, Pa., for the government.

William T. Cannon and Louis Lipschitz, Philadelphia, Pa., for defendant Edward MacEntee.

## MEMORANDUM

KATZ, District Judge.

Now, during trial, I must decide the prosecution's Motion to Exclude evidence of a polygraph examination of a government witness in this criminal case. I waited as long as possible to get the feel of the case. Four days before trial, the government served the defense with the FBI polygraph examination report of government witness John Stayton.[1] The report, prepared by examiner Frank A. Cryon, stated "deception indicated" with respect to every question posed. The defense wishes Mr. Cryon to testify as an expert regarding the examination of Mr. Stayton, who is one of several alleged co-conspirators of the accused who will testify against them. The government has moved *in limine* to suppress any reference to the examination.

In *United States v. Downing*, 753 F.2d 1224 (3d Cir.1985), the court articulated a standard for the admission of expert testimony concerning novel scientific techniques. The court held that Federal Rule of Evidence 702 "requires that a district court ruling upon the admission of (novel) scientific evidence, i.e., evidence whose scientific fundaments are not suitable candidates for judicial notice, conduct a preliminary inquiry focusing on (1) the soundness and reliability of the process or technique used in generating the evidence, (2) the possibility that admitting the evidence would overwhelm, confuse, or mislead the jury, and (3) the proffered connection between the scientific research or test result to be presented, and particular disputed factual issues in the case." *Id.* at 1237. After applying the *Downing* test to the polygraph examination at issue here, I find that such evidence is inadmissible.

First, in determining the reliability of the scientific technique employed, the court "may take judicial notice of expert testimony that has been offered in earlier cases." *Id.* at 1239. A review of the evidence regarding polygraph examinations reveals that "[t]here is no agreement in the scientific community about the accuracy of polygraph technique...." *Brooks v. Scheib*, 813 F.2d 1191, 1194 (11th Cir 1987); *United States v. Scallatino*, No. 85–114, slip op. at 3 (E.D.Pa. June 27, 1985) ("The unreliability of lie detectors as a device for discovering the truth is a matter of wide judicial recognition").

"After assessing the reliability of the evidence, the court must also weigh any danger that the evidence might confuse or mislead the jury." *Downing*, 753 F.2d at 1239. Even scientific techniques with substantial indicia of reliability may confuse, rather than assist, the jury. *Id.* Admission of polygraph evidence creates a danger that the scientific nature of the test will cause jurors to give it greater weight

1. The polygraph examination contained the following questions and responses:

A. Do you now plan on not cooperating fully with the Government?
No.
B. Have you engaged in any significant illegal activity since 1981 that you have not now told JIM and BILL about?
No.
C. Do you now have plans to eventually flee?
No.

D. Regarding those areas that BILL and JIM debriefed you on to date, did you deliberately lie about any of those areas?
No.
E. At this point, do you plan to not testify truthfully regarding information you furnished to the FBI?
No.
F. Have you ever played an active role in any murder, before, during, or after the fact?
No.

than it deserves. I find that because "polygraph evidence ... is likely to be shrouded with an aura of near infallibility, akin to the ancient [oracle] of Delphi," *United States v. Alexander*, 526 F.2d 161, 181 (8th Cir.1975), such evidence is likely to mislead the jury.

In addition, the court has noted that "[t]echniques that rely on the use of a mechanical device to produce data as well as upon the exercise of an expert's subjective judgment to draw conclusions from the data would also seem to raise at least the possibility of confusing or misleading the jury." *Downing*, 753 F.2d at 1239. Polygraph evidence employs just such a technique. *See United States v. Ioannucci*, No. 88–139, slip op. at 3–4, 1989 WL 29242 (E.D.Pa. Mar. 28, 1989); *United States v. Williams*, 583 F.2d 1194, 1199 n. 9 (2d Cir.1978).[2]

An additional consideration is whether the proffered scientific evidence is sufficiently connected to the facts of the case that it will aid the jury in resolving a factual dispute. *Downing*, 753 F.2d at 1242. In this case, the witness took the polygraph examination in December, 1986, two and one-half years before trial. In addition, there may be other ways to impeach the witness that do not involve the dangers inherent in polygraph evidence.

Few courts have discussed the admission or exclusion of evidence regarding a government witness's polygraph examination. The two major opinions that do so arrive at opposite conclusions. I believe that both opinions contain logical flaws.

In *United States v. Hart*, 344 F.Supp. 522 (E.D.N.Y.1971), the court held that evidence that the principal government witness had taken and failed a polygraph examination presents an exception to the general rule against admission of polygraph evidence. The court held that in light of the government's duty to disclose all exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and under the long-standing rule that the government should not obtain a conviction on evidence which it knows to be perjurious, a defendant is "entitled to inquire concerning any investigations made by the government which might have put [him] on notice that a government witness was untruthful." *Id.* at 523. The court went on to state:

> Having requested that [their witness] submit to polygraph tests, and then rejected the conclusions of the tests, the government should be prepared to show (a) the prior experience with polygraph tests and with the particular testers which led [them] to have [the witness] submit to the tests; (b) the basis for the subsequent doubts about the validity of polygraph tests which led to the disregard of the results; and (c) any other relevant material concerning the tests which defendants may request from the government on their own behalf. The bearing of the lie detector test on [the witness's] credibility should be determined by the jury and not by a prior court hearing.

The *Hart* court makes an incorrect logical leap. *Brady v. Maryland* stands for the principal that the constitution requires the government to turn over exculpatory information to the defense. Once the government turns over such information, however, the question of whether it may be introduced at trial is governed by the Federal Rules of Evidence, not by *Brady*.[3]

---

2. In *Williams*, the court explained that "[s]pectrography is qualitatively different from polygraph evidence. In spectrography, the examiner merely compares spectrograms reflecting the purely *physical characteristics* of a voice. In polygraph analysis, the examiner must go on, to extrapolate a judgment of something not directly measured by the machine, *i.e.*, the credibility of the person examined. The skill of the polygraph examiner, the kinds of questions asked, natural variations [both] in blood pressure among individuals[ ] and in how accustomed they are to lying, are unpredictable variables that make the polygraph technique far more speculative than is spectrographic analysis." *Id.* at 1199 n. 9.

3. A court admitted evidence of a polygraph taken by the government's principal witness (one of the defendant's co-conspirators) in *United States v. Lynn*, 856 F.2d 430 (1st Cir.1988). There, the court held that it was error for the trial court to completely foreclose the defense's

The district court in *United States v. Earley*, 505 F.Supp. 117 (S.D. Iowa 1981), reached the opposite result. The defendant wished to submit evidence that the government's principal witness, an accomplice of the defendant, had taken a polygraph examination.[4] The court excluded the evidence under Fed.R.Evid. 702, which provides: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact *to understand the evidence or to determine a fact in issue*, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise." The court held that this reference to a "fact in issue" is a "reference to a *material* fact of the case and is not a reference to the issue of the credibility of a witness who testifie[s] to material facts." *Id.* at 120 (emphasis added).

■ I disagree. The credibility of the prosecution's chief witness is a material fact in issue in a criminal trial. Rule 702 does not automatically exclude any scientific evidence as to the credibility of government witnesses.

In this case, the unclear reliability of the polygraph technique and its risks of misleading the jury weigh heavily in favor of exclusion under Rule 702. Therefore, the polygraph examination of the government witness is inadmissible.

■ Finally, although I find that analysis under Rule 702 compels exclusion of the proffered polygraph evidence, I would also exclude such evidence under Rule 403. "[E]ven if the proffered evidence satisfies Rule 702, the district court may decide nonetheless to invoke Rule 403 to exclude the evidence if the court finds its probative value to be substantially outweighed by other dangers...." *Downing*, 753 F.2d at 1242–43.

I believe that the polygraph's probative value is substantially outweighed by the danger of unfair prejudice or misleading the jury because of (a) the risk that the jury will attribute a higher value to the test than the scientific evidence justifies; (b) the rather long time elapsed between the test and the trial; (c) the differences in subjects between the test questions and Stayton's trial testimony;[5] (d) the lack of precision in the test questions; (e) the fact that a significant part of Stayton's testimony consists of taped conversations between Stayton and defendant MacEntee; (f) the fact that Stayton's untaped testimony is not crucial to the government's case, which relies on the testimony of numerous other alleged former accomplices and taped conversations.

Moreover, exclusion under Rule 403 is justified if other methods are available to serve the purposes for which the polygraph evidence is sought to be introduced. *Id.* at 1243. Government witness John Stayton may be impeached by means other than admission of the polygraph examination results.

An appropriate order follows.

## ORDER

AND NOW, this 30th day of May, after a hearing and upon consideration of the government's Motion in Limine Re Polygraph Evidence and the responses of defendants MacEntee and Wareham, it is hereby ORDERED that the Motion is GRANTED.

---

cross-examination as to the polygraph examination. The witness's plea agreement contained a condition that he take and pass a polygraph examination; failure of the examination could result in the nullification of the agreement. The results of the examination were deemed "inconclusive" by the examiner, and the defense sought to introduce evidence of this fact to demonstrate the witness's motive to "continue to please the government by lying" about the defendant's participation in the conspiracy. *Id.* at 432.

The *Lynn* case differs greatly from the case at bar. In the *Lynn* case, evidence of the polygraph examination was not being offered as scientific evidence regarding the credibility of a witness, but rather the polygraph *itself* represented a motive for the witness to perjure himself at trial.

4. The results of the examination were inconclusive.

5. *See* Government Affidavit, filed May 30, 1989.

Counsel may not refer to any polygraph evidence.