POLSTON, J.,
concurring in part, dissenting in part.
I concur with Chief Judge Kahn’s opinion on the merits. The primary evidence against Childers comes from a government witness, Junior, who had a deal with the government, but the procedural safeguard of a complete and full cross-examination of Junior was not permitted. The State’s attempted revocation of their plea agreement was a significant “slap-over-the-head attention-grabber” to Junior, even though it was denied by the trial court. Junior’s view of the State’s action and its effect on the status of their deal, including how he needed to perform under the agreement to ensure the State did not attempt another revocation, should have been allowed as evidence of Junior’s bias. See United States v. Abel, 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (stating that “[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness’ testimony”). Therefore, Childers’ Sixth Amendment Confrontation Rights under the United States Constitution were violated. See Davis v. Alaska, 415 U.S. 308, 316-17, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (stating that “the exposure of a witness’ motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination”).
A witness testifying on behalf of the state because he has a deal with the state obviously may be biased.[8] Nevertheless, *119 such testimony is allowed and is extensively used in our criminal justice system because we trust juries to sort out the facts and evaluate the witness’ credibility through the aid of comprehensive cross-examination.[9] What the witness thinks about the deal, the terms of the deal, how it came about, and the witness’ understanding of how the parties have performed, or will perform, under the deal, and possible implications of such performance, all affect the potential bias of the witness and are therefore subject to cross-examination.[10]
“A successful showing of bias on the part of a witness would have tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony.” Abel, *120 469 U.S. at 51, 105 S.Ct. 465. The State’s willingness to withdraw their agreement based on the content of Junior’s testimony was demonstrated through their attempted revocation. Therefore, the State’s actions made the existence of Junior’s bias more probable, and more relevant to support that inference. Id. at 52, 105 S.Ct. 465 (stating, “[b]ias may be induced by a witness’ like, dislike, or fear of a party, or by the witness’ self-interest”).
The actions of the witness and the government in relation to an established deal, as has been stated in the cases cited above, are relevant and may be probed on cross-examination, even where the cross-examination raises otherwise inadmissible evidence. See United States v. Lynn, 856 F.2d 430, 432-34 (1st Cir.1988). In Lynn, the court held that the fact that neither government witness testifying under a plea agreement had successfully passed his polygraph test as his agreement required was relevant and could be probed on cross-examination. The court explained that the fact that the witnesses had not passed their polygraph exams, and thus had not successfully completed the terms of their plea agreements, could show that the witnesses had reason to continue to testify favorably to the government “in return for future prosecutorial favors.” Id. at 433. While the scope of cross-examination was within the trial court’s discretion, the court stated, “[t]hat discretion ... ‘becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant.’” Id.; see also Mayer, 556 F.2d at 250. In Lynn, that threshold had not been met because the trial court “foreclosed [a] topic [that] may have presented the only concrete example of the hold the government might still have had over the witness.” 856 F.2d at 433.
In the instant case, “the constitutionally required threshold level of inquiry [to be] afforded the defendant” was not met because the trial court “foreclosed [a] topic [that] may have presented the only concrete example of the hold the government might still have had over the witness.” Lynn, 856 F.2d at 433. The State’s attempted revocation of Junior’s plea agreement could have worked as a “slap-over-the-head attention-grabber,” despite the fact that the trial court denied it. This evidence could show that Junior had reason to continue to testify favorably to the government “in return for future prosecu-torial favors.” Id. For instance, Junior could have hoped that if he testified favorably for the State, the State would not again attempt to revoke his plea agreement, and that if he did not, another revocation may be sought by the State. It was, therefore, important to a fair trial that appellant have the opportunity to engage in vigorous and searching cross-examination and present all of the facts bearing on Junior’s credibility, including the actions of prosecutors in relation to the witness’ plea agreement. See e.g. Mayer, 556 F.2d at 248-49; Lee, 506 F.2d at 117.

. See United States v. Cervantes-Pacheco, 826 F.2d 310, 315 (5th Cir.1987) ("No practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence. It is difficult to imagine a greater motivation to lie than the inducement of a reduced sentence, but courts uniformly hold that such a witness may testify so long as the government’s bar *119 gain with him is fully ventilated so that the jury can evaluate his credibility.”).

. See United States v. Abel, 469 U.S. 45, 50, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (stating that the Confrontation Clause of the Sixth Amendment requires a defendant to have an opportunity to show bias on the part of a prosecution witness, citing Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)); Hoffa v. United States, 385 U.S. 293, 311, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) (ruling that even though the government informer may have had more motives to lie than most other informers, it does not follow that his testimony was constitutionally inadmissible; "[t]he established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury”); On Lee v. United States, 343 U.S. 747, 757, 72 S.Ct. 967, 96 L.Ed. 1270 (1952) (the "use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility .... a defendant is entitled to broad latitude to probe credibility by cross-examination and to have the issues submitted to the jury with careful instructions”); United States v. Barnett, 197 F.3d 138, 144 (5th Cir. 1999) ("[w]e have opted to protect the judicial process from the stain of perjury with other safeguards, including the prohibition on the use of perjured testimony, the requirement that the government disclose such arrangements, the opportunity for defense counsel to engage in rigorous cross-examination, and the instruction of the jury on the suspect nature of compensated testimony”); United States v. Dailey, 759 F.2d 192, 200 (1st Cir.1985) (stating that government witnesses should be allowed to testify under a plea agreement with procedural safeguards in place, including that "[t]he agreements should be read to the jury and made available during its deliberations” and "defense counsel may cross-examine the accomplices at length about the agreements”); United States v. Lee, 506 F.2d 111, 117 (D.C.Cir.1974) (stating that "[t]he availability of vigorous cross-examination is significant context for validating the use and testimony of accomplices and secret informers as a necessary means of coping with covert criminality”).

. See e.g. Leavine v. State, 109 Fla. 447, 147 So. 897, 902-03 (1933) (concluding that had the issue been properly preserved, it would have been error for the trial court to limit cross-examination of a state witness as to his hopes for leniency when he testified previously for the State); Holt v. State, 378 So.2d 106, 107-08 (Fla. 5th DCA 1980) (stating, "[a]ny evidence which tends to establish that a witness is appearing for the State for any reason other than merely to tell the truth should not be kept from the jury,” including the details surrounding a grant of immunity); United States v. Mayer, 556 F.2d 245, 248-49 (5th Cir.1977) (stating that “cross-examination of a witness in matters pertinent to his credibility ought to be given the largest possible scope ... [tjhis is especially true where a prosecution witness has had prior dealings with the prosecution or with other law enforcement officials, so that the possibility exists that his testimony was motivated by a desire to please the prosecution in exchange for the prosecutor’s actions in having some or all of the charges against the witness dropped, securing immunity against prosecution for the witness, or attempting to assure that the witness receives lenient treatment in sentencing”) (citations omitted); United States v. Masino, 275 F.2d 129, 132 (2d Cir.1960) (stating that "it was relevant for the defense to develop any facts bearing upon [the witness'] possible motives to falsify his testimony”).