UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-10457
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID EARL KATES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

May 3, 1999

Before HIGGINBOTHAM, JONES, and WIENER, Circuit Judges.

PER CURIAM:

Appellant David Earl Kates, sentenced to 360 months imprisonment as a career offender convicted of possession with intent to distribute crack cocaine, asserts three issues on appeal. He contends that the evidence was insufficient to show that the 19.67 grams of crack cocaine he possessed were intended for distribution; that the government withheld exculpatory Brady evidence of Yshone Chamine Moore; and that his prior convictions do not render him a career offender under the Sentencing Guidelines. Finding no reversible error, we affirm.

Amarillo police officers were chasing a suspected stolen car, which pulled to a stop at the house of Yshone Chamine Moore, a/k/a "Fat Mama." Appellant Kates emerged from the car and walked toward the house. Officer Brent Harlan testified that he saw Kates pull a package from the waist of his pants and throw it in the direction of the house. As Kates did so, Officer Harlan tackled Kates, but before he could handcuff him, Harlan saw Moore take the package and run around the side of the house. Officer Harlan chased Moore and took her into custody. Kates returned to his car and drove away, but he was apprehended within a few blocks. Neither Kates nor Moore had drugs in their possession, but Moore led the officers to a baggy of crack cocaine hidden in tall grass.

Kates and Moore were charged with possession of cocaine base (crack cocaine) with intent to distribute. Moore pleaded guilty about one week before Kates's trial. In doing so, she stipulated to a factual recitation that included Kates saying "Here, take this Mama," as he threw the clear plastic baggy toward her. Moore stipulated that the baggy contained crack cocaine.

The government led Kates to believe that Moore would be a prosecution witness, but she was never called to testify. Kates's defense was that the drugs belonged to Moore, but she made a deal with the prosecutors to receive a more lenient sentence if she testified against Kates. The defense also argued that no physical evidence connected Kates to the drugs. Kates was convicted.

On appeal, Kates asserts that the government did not establish that he possessed cocaine base with intent to distribute. This crime requires proof beyond a reasonable doubt that the defendant (1) knowingly (2) possessed cocaine (3) with intent to distribute it. See United States v. Ortega Reyna, 148 F.3d 540, 543-44 (5th Cir. 1998). Intent to distribute may be inferred from the possession of a quantity of drugs too large to be used by the defendant alone. See United States v. Prieto-Tejas, 779 F.2d 1098, 1101 (5th Cir. 1986). Possession of a small quantity of illegal drugs consistent with personal use does not support an inference of intent to distribute in the absence of other evidence, such as drug paraphernalia, guns, or large quantities of cash. See United States v. Hunt, 129 F.3d 739, 742-44 (5th Cir. 1997).

This court must affirm a conviction if a rational trier of fact could have found, viewing the evidence and all inferences therefrom in the light most favorable to the verdict, that the evidence established the essential elements of the crime beyond a reasonable doubt. See United States v. Mmahat, 106 F.3d 89, 97 (5th Cir. 1997).

DEA Agent Larry Lamberson testified that the 19.67 grams of crack cocaine would be sold in rocks in very small amounts. He testified that the baggy seized would probably contain 190 rocks and would be valued from $1,900 to $3,800. He opined that this was definitely a distributable quantity and that such a quantity is hardly ever purchased for personal use. Kates's finger prints were

3

not identified on the baggy, and no other evidence of drug dealing exists in this record.

Kates contends that under applicable case law, the amount he was found to possess, less than one ounce of crack cocaine, is insufficient to support an inference of intent to distribute. This court has overturned convictions of possession with intent to distribute 2.89 grams[1] and 7.998[2] grams of crack cocaine. Kates also relies on the Supreme Court's decision that possession of 14.68 grams of cocaine is insufficient, in and of itself, to establish intent to distribute. See Turner v. United States, 396 U.S. 398, 422-23, 90 S. Ct. 642, 655-56 (1970).

Not only do the Fifth Circuit cases involve much smaller quantities of crack, but Kates's analogy to Turner is flawed. As the Eleventh Circuit observed, cases like Turner "are distinguishable since they do not involve the more potent, concentrated form of the drug, cocaine base." United States v. Robinson, 870 F.2d 612, 612-13 (11th Cir. 1989). The Eleventh Circuit noted that the mandatory minimum sentencing provisions for cocaine base are 100 times more stringent than for other forms of cocaine. See id. at 613; see also 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(B). While Turner is inapposite, other circuit court cases have consistently held that amounts of crack cocaine weighing

---

[1]See United States v. Skipper, 74 F.3d 608, 611 (5th Cir. 1996).

[2]See Hunt, 129 F.3d at 742.

4

as little as 10 grams could be sufficient to sustain convictions for possession with intent to distribute. See United States v. Smith, 91 F.3d 1199, 1201 (8th Cir. 1996) (9.9 grams of cocaine base "far exceeds the amount attributable to personal use"); United States v. Bell, 954 F.2d 232, 235 (4th Cir. 1992) ("The thirteen plus grams of crack . . . is a 'large quantity' supporting the factfinder's inference that an intent to distribute existed."), overruled on other grounds by United States v. Burgos, 94 F.3d 849 (4th Cir. 1996) (en banc); Robinson, 870 F.2d at 613 (25.2 grams sufficient); see also United States v. Lamarr, 75 F.3d 964, 973 (4th Cir. 1996) (5.72 grams sufficient).

Based on the totality of these authorities, together with DEA Agent Lamberson's confirmation that the 19.67 grams of crack was almost surely intended for distribution, the amount possessed by Kates created at least a jury question regarding intent to distribute. The jury had sufficient evidence to conclude that Kates was guilty as charged.

Kates's next contention is that the government should have informed him that Moore changed her story just before trial, dissuading the government from calling her as a witness. Kates asserts that her new testimony would have been material and exculpatory, and the government's failure to disclose this violated Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). Kates raised this contention in a motion for new trial based on newly discovered evidence, and he appended an affidavit of Moore which

5

states, inter alia, that Kates "didn't toss me anything and I never saw him with any dope or with a plastic bag."  Moore's affidavit also states that she did not know where the dope came from and that she did not see it come from Kates.

Reviewing the Brady issue de novo as we are bound to do, U.S. v. Green, 46 F.3d 461, 464 (5th Cir. 1995), we conclude that the proffered evidence from Moore either was not exculpatory or was not material to the outcome of the trial.  The district court concluded that even if Moore had testified at trial by saying what is in her affidavit, that testimony would not be exculpatory of Kates.

We shall assume arguendo that the prosecution knew, contrary to Agent Lamberson's affidavit submitted in response to the motion for new trial, that Moore had changed her story before trial to the version related in her post-trial affidavit. Moore's affidavit is at least ambiguous on the critical point of Kates's possession of the baggy containing crack.  Neither interpretation of her affidavit, however, assists Kates.  First, if Moore testified that Kates never threw her the baggy or said anything to her, she would be making statements contrary to her sworn statements at her guilty plea hearing.  Such plainly inconsistent and possibly perjurious testimony by Moore at Kates's trial could not be credible and would not be exculpatory.  Second, considering the other possible interpretation of Moore's affidavit, if she did not know where the baggy came from, her testimony would not have

contradicted the police officers.  They specifically testified that Kates threw the baggy to Moore, who ran off with it and tried, unsuccessfully, to toss it away in a vacant lot.  This testimony would not have incriminated Kates, but it wouldn't have created a conflict that could have exculpated him either.

In any event, the probability that Moore's testimony could have put this case in a such a different light as to undermine confidence in the verdict is not a reasonable one.  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10 (1978).  Given the weight of the other evidence and Moore's late unreliable assertions, we find there is no reasonable probability that Kates would have been acquitted if the allegedly exculpatory testimony had been admitted.  See Bagley, 473 U.S. at 682.

Kates resists being sentenced as a career offender under U.S. Sentencing Guidelines Manual § 4B1.1, i.e., a person who had at least two prior felony convictions of a controlled substance offense.  Kates denies that he has two previous relevant felony convictions because he was arrested for two separate offenses on the same day and was sentenced for those offenses on the same day.

If the defendant's prior convictions constitute "related cases" within the meaning of U.S. Sentencing Guidelines Manual § 4A1.2(a)(2), they will not be treated separately for career

7

offender purposes. The official commentary to that guideline states that "prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S. Sentencing Guidelines Manual § 4A1.2 cmt. 3. This court has held that "a finding that prior cases were 'consolidated' will require some factual connexity between them, or else a finding that the cases were merged for trial or sentencing." United States v. Huskey, 137 F.3d 283, 288 (5th Cir. 1998). Either a formal order of consolidation or the listing of the two offenses in the same criminal information under the same docket number is sufficient to find that two separate offenses were consolidated. See id. By contrast, neither the fact that sentencing for both offenses occurs on the same day (and/or in the same proceeding) nor the imposition of identical, concurrent sentences is sufficient to find that factually distinct offenses were "related cases." See id.

Kates's previous state court convictions arise from his delivery of cocaine to an undercover agent on May 11, 1991, and the separate delivery of cocaine to another undercover agent one week later. Kates was arrested for the offenses on the same day. Two indictments were returned against him, and the cases were not formally consolidated. Kates received concurrent but different sentences from a single judge: he was sentenced to ten years deferred probation for one offense and ten years straight probation

8

for the other.  Kates was paroled on each offense on the same day. These coinciding events are not, however, sufficient to find consolidation under Fifth Circuit precedent.  See, e.g., United States v. Garcia, 962 F.2d 479, 482-83 (5th Cir. 1992).  This court has rejected the proposition that cases must be considered consolidated simply because two convictions have concurrent sentences.  See id. at 482.  Moreover, as Huskey demonstrates, the simultaneous disposition of two separate cases does not amount to consolidation for guidelines purposes.  Kates's arguments based on case law from the Ninth Circuit or disagreement with this circuit's precedent will not suffice to overcome the career offender enhancement.

For the foregoing reasons, the judgment of conviction and sentence are **AFFIRMED**.