# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 16, 2007

Charles R. Fulbruge III
Clerk

No. 07-50316

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

GUADALUPE SANCHEZ GALINDO, JR.

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:06-CR-156-2

Before WIENER, DeMOSS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Appellant Guadalupe Sanchez Galindo, Jr. ("Galindo") was charged with aiding and abetting the possession with intent to distribute 500 grams or more of cocaine.[1] Following his jury trial conviction, the district court sentenced

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The language of the indictment must be read as charging each defendant with possession with intent to distribute and with aiding and abetting the possession with intent to distribute. The trial judge instructed the jury as to the requirements for finding the defendant guilty of both possession with intent to distribute and aiding and abetting. The jury form, however, permitted only a verdict of guilty as charged in the indictment, which includes both possession with intent to distribute and aiding and abetting. As the jury could have found

Galindo to 93 months in prison. Galindo timely appealed alleging three points of error: (1) that the evidence was insufficient to support his conviction, (2) that the district court erred in admitting certain testimony over hearsay and confrontation clause objections, and (3) that the district court erred in refusing to grant Galindo a two level reduction for his role as a minor participant. For the following reasons, we affirm.

I.

By grand jury indictment dated August 23, 2006, Galindo was charged with one count of aiding and abetting the possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2. He pleaded not guilty and proceeded to a jury trial.

The investigation that ultimately resulted in Galindo's indictment began when informant William Carter Ray ("Ray") agreed to assist police by coordinating a cocaine purchase. Ray testified that on July 27, 2006, he contacted his normal supplier, Victor Alvarez, in Mexico and agreed to purchase one kilogram of cocaine for $17,000. Ray testified that Alvarez informed him that Galindo and his associate, Jose Gardea, were "out on a job," but that they would send someone to deliver the cocaine when they got back. Ray further testified that he was acquainted with Galindo and that Galindo and Alvarez had "done business" together in the past. Ray stated that he believed Alvarez and Galindo were still dealing drugs together. In return for Ray's testimony, the Government recommended a reduced sentence for his pending drug charge.

Ray told police that he believed the drugs would come from a house that police identified from Ray's description as 1016 North Lee in Odessa, Texas. That same day, police set up surveillance at that address and observed several

---

the defendant guilty of (1) the substantive crime of possession with intent to distribute, (2) aiding or abetting the possession with intent to distribute, or (3) possession with intent to distribute and aiding abetting the possession with intent to distribute, we address all three possibilities.

individuals, including Galindo, Chris Vargas, and Jose Gardea, coming and going from the residence. Late in the afternoon, Vargas left 1016 North Lee and went directly to Ray's residence, where police arrested Vargas, who was in possession of one kilogram of cocaine.

Shortly after Vargas left the 1016 North Lee residence, police arrested Galindo and Gardea as they attempted to leave. Police then obtained a warrant and searched the residence. During the search, officers found cocaine powder on the kitchen table and floor, a box containing two baggies of cocaine in a kitchen cabinet, a bowl with white powder residue, two bags of marijuana, some cocaine wrapped in a dollar bill, digital scales, and empty bottles of inositol and acetone, which, according to testimony at trial, are used as cutting agents for cocaine. The parties stipulated that police recovered more than one kilogram of cocaine at the residence. Additionally, testimony established that Galindo's fingerprint was found on one of the baggies of cocaine.

In addition to finding the drugs and related items, police recovered evidence tying Galindo to the residence, including personal mail and bills addressed to him there. The Government presented additional evidence indicating that Galindo resided at 1016 North Lee: (1) the water utility for the residence was in Galindo's name, (2) Galindo gave the 1016 North Lee address as his of place residence when he was arrested, and (3) the property was owned by Robert and Nadia Galindo, presumably relatives of Galindo.

Based on this evidence, the jury convicted Galindo of the sole count of the indictment. The district court sentenced Galindo to 93 months in prison, refusing Galindo's request for a two-point offense level reduction based on his allegedly minor role in the crime. As mentioned, Galindo argues that: (1) the evidence was insufficient to support his conviction, (2) the district court erred in admitting certain testimony over hearsay and confrontation clause objections, and (3) the

district court erred in refusing to grant Galindo a two level reduction for his role as a minor participant. We examine each in turn.

II.

A. Sufficiency of the Evidence

Galindo argues that the evidence presented at trial was insufficient to sustain his conviction. This court reviews properly preserved sufficiency of the evidence claims "by viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict and determining whether a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." United States v. Arnold, 467 F.3d 880, 883 (5th Cir. 2006) (internal quotation marks omitted). "[C]redibility determinations are the sole province of the jury" and will not be disturbed by the court. See United States v. Cathey, 259 F.3d 365, 368 (5th Cir. 2001). Further, the court only considers whether "the jury made a rational decision," not whether it correctly determined the defendant's guilt or innocence. United States v. Alarcon, 261 F.3d 416, 421 (5th Cir. 2001) (internal quotation marks omitted).

The indictment alleged that Galindo, Gardea, and Vargas "aided and abetted by each other, unlawfully, knowingly, and intentionally possessed with intent to distribute . . . 500 grams or more of . . . cocaine." This language allowed the jury to find that Galindo intentionally possessed 500 or more grams of cocaine with the intent to distribute, that Galindo aided and abetted the others to do so, or both. See 18 U.S.C. § 2 (stating that anyone who "commits an offense against the United States or aids [or] abets . . . is punishable as a principal").

To convict Galindo of possession with the intent to distribute, the Government had to prove that Galindo (1) knowingly (2) possessed cocaine (3) with the intent to distribute. See United States v. Rojas Alvarez, 451 F.3d 320, 333 (5th Cir. 2006). To convict under the aiding and abetting theory, the Government had to prove that the underlying substantive offense occurred and

that Galindo "(1) associated with a criminal venture; (2) participated in the venture; and (3) sought by action to make the venture successful." Id. (internal quotation marks omitted).

Regarding the first theory, the Government argues that the evidence supports Galindo's conviction. We agree. First, the Government presented evidence that, if believed, clearly establishes that Galindo knowingly possessed cocaine. Possession in this context can be actual or constructive. Arnold, 467 F.3d at 883. Constructive possession exists if "the defendant knowingly has ownership, dominion or control over the contraband itself or over the premises in which the contraband is concealed." Id. (internal quotation marks omitted).

The Government argues that Galindo resided at 1016 North Lee, and thus, he had dominion and control over the premises either as a sole occupant or a joint occupant. Although Galindo, his girlfriend, and acquaintance Ubaldo Sanchez testified that Galindo did not reside at that address, the Government presented substantial evidence to the contrary. For example, when Galindo was arrested he gave the 1016 North Lee address as his place of residence, police seized mail addressed to him at that address, the water utility for the home was listed under his name, he had a key, and he was responsible for paying the property taxes. This evidence allowed a rational jury to find that Galindo resided at 1016 North Lee and to reject testimony to the contrary. Cf. Arnold, 467 F.3d at 883 (finding the Government cited ample evidence of the defendant's dominion and control over the house when defendant (1) rented the property in his name and paid rent, (2) changed the lock after moving in, (3) installed a video surveillance system, (4) paid all utility bills, and (5) listed the address on his driver's license and automobile insurance). While the facts of this case differ somewhat from Arnold, the evidence here would allow a rational jury to reach the same result.

When only one person resides at an address they are deemed to have dominion and control over the premises and items therein. See id. at 883-84. However, in the case of joint occupants, constructive possession requires "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the illegal item." United States v. Hinojosa, 349 F.3d 200, 204 (5th Cir. 2003) (internal quotation marks omitted). Even assuming that Galindo was a joint occupant at 1016 North Lee, the evidence presented allowed a rational jury to find that Galindo had actual knowledge of, and access to, the cocaine.

First, a search of the residence revealed cocaine powder on the kitchen table and floor. Even more significant, police found Galindo's fingerprint on a bag of cocaine recovered from the house. These facts could lead a rational jury to find that Galindo knew about all of the cocaine and had access to it. See id.

Because the evidence allowed the jury to find that Galindo resided at 1016 North Lee and that he had knowledge and access to the cocaine present there, a rational jury could have found that Galindo constructively possessed the cocaine. See id. These facts also permit a finding that Galindo knowingly possessed the cocaine. Regarding the intent to distribute element, intent may be inferred from the quantity of drugs possessed by the defendant. United States v. Kates, 174 F.3d 580, 582 (5th Cir. 1999). It is undisputed that over one kilogram of cocaine was seized from the 1016 North Lee residence. This quantity is consistent with an intent to distribute. See id. at 582-83.

Galindo attempts to analogize our decision in United States v. Rojas Alvarez to his case. In Rojas Alvarez, we found that co-defendant Huberto Pinon's conviction for aiding and abetting the possession of heroin and cocaine with the intent to distribute within 1000 feet of a school was not supported by sufficient evidence. 451 F.3d at 333-38. The evidence proved that Pinon's wife was dealing heroin and cocaine, and that the Government charged Pinon with

aiding and abetting based on the fact that police found drugs and cash in a hidden compartment in Pinon's trailer. Id. at 324-25. The outcome turned on whether Pinon knew of the drugs hidden inside his trailer, because, as the court noted, "without Pinon's knowledge of the drugs, the Government's entire case against him unravels." Id. at 337.

The Government conceded that, because the drugs were hidden, it could not rely merely on Pinon's ownership and control of the trailer to establish his knowledge. Id. at 334. The court held that the Government failed to carry its burden to produce additional evidence of Pinon's knowledge because nothing proved that Pinon was aware the secret compartment existed, much less that he knew of its contents. Id. at 334-35.

While Galindo's knowledge of the cocaine found at 1016 North Lee is an important issue here, the present case is readily distinguishable from Rojas Alvarez. First, police discovered cocaine dust on the kitchen table and floor, allowing a rational jury to believe that a resident of that house would have been aware of the cocaine. Of course, this is different from Rojas Alvarez, where the only drugs in the trailer were found in a hidden compartment. See id. at 325. Second, Galindo's fingerprint was on a bag of cocaine. This fact also allowed a rational jury to infer that Galindo knew about the cocaine. In contrast, no such evidence existed in Rojas Alvarez. See id. These facts clearly distinguish this case from Rojas Alvarez, where the Government attempted to "cobble together inferences from the testimony" to prove the defendant knew about the drugs.[2] See id. at 337.

In sum, the evidence allowed a rational jury to find that all three elements for possession with the intent to deliver were satisfied beyond a reasonable

---

[2] The evidence of Galindo's knowledge of the contraband also distinguishes this case from United States v. Williams, upon which Galindo relies. See 985 F.2d 749, 756 (5th Cir. 1993).

doubt. Galindo's initial admission to police that 1016 North Lee was his address, coupled with the other evidence tying him to that residence, allowed a rational jury to conclude he resided there. Further, the fact that cocaine was discovered in plain view in the house and Galindo's fingerprint was found on a bag of cocaine, could have led a rational jury to conclude that Galindo knew about the cocaine and had access to it. A finding of these facts would allow a jury to conclude that Galindo had knowledge and constructive possession of the cocaine. Further, the amount of cocaine seized allows an inference of an intent to distribute. See Kates, 174 F.3d at 582-83.

Alternately, we agree that the evidence supports conviction under an aiding and abetting theory. To prove aiding and abetting the Government had to show that the underlying substantive offense occurred and that Galindo "(1) associated with a criminal venture; (2) participated in the venture; and (3) sought by action to make the venture successful." United States v. Infante, 404 F.3d 376, 385 (5th Cir. 2005). The evidence showed that Galindo had knowledge and constructive possession of the cocaine at 1016 North Lee, that he allowed Gardea and Vargas access to the house, and that his fingerprint was recovered from a bag of cocaine inside the house. A rational jury could conclude that this evidence proves that Galindo associated with and participated in a criminal venture and that took action seeking to make it successful.

## B. Hearsay and Confrontation Clause

Galindo argues that the district court erred by allowing Ray to testify about statements made by Victor Alvarez during the July 27, 2006 phone conversation. The Government contends that these statements were admissible under Federal Rule of Evidence 801(d)(2)(E), which provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. "We review the admission of hearsay evidence under the non-hearsay definition of Rule 801(d)(2)(E) for abuse of discretion." United

States v. Solis, 299 F.3d 420, 443 (5th Cir. 2002) (internal quotation marks omitted).

Rule 801(d)(2)(E) allows admission of Alvarez's statements if the Government establishes "(1) the existence of a conspiracy, (2) the statement was made by a co-conspirator of the party, (3) the statement was made during the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy." See id. Galindo claims that two of these prongs are not met.

First, Galindo contends that the second prong is not met because the evidence was insufficient to prove the existence of a conspiracy between Alvarez and Galindo. Ray conceded that Alvarez did not mention Galindo by name during the telephone conversation and that he (Ray) did not know how Alvarez transferred the cocaine to Galindo. Further, Ray admitted that he never spoke to Galindo personally about the July 27, 2006 drug transaction.

However, Galindo's claim that no evidence links him to Alvarez is inaccurate. Ray, whose statements to police about the conspiracy's operations were repeatedly corroborated by subsequent events, testified that it was his understanding that Galindo was involved in the conspiracy. He stated, "It was my understanding that [Alvarez] would call Mr. Galindo . . . then the runner would be sent to my house." Ray based his understanding on the fact that he knew that Alvarez and Galindo had done business in the past and because "we were all selling dope, everybody kind of knows what everyone else is doing." Additionally, Ray testified that he dealt indirectly with Galindo on past drug deals. Ray further testified that he had a telephone conversation with Vargas on July 27th and Vargas told him that Galindo and Gardea were "out on a job" and that the cocaine would be delivered "[w]hen they got back from their job." Further, the same day Ray ordered the cocaine from Alvarez, police observed Vargas leave Galindo's house to deliver the cocaine to Ray. Galindo was present at the house that day—the same day police recovered large quantities of cocaine

there, with at least one package bearing Galindo's fingerprint. Taken together, this evidence makes clear that the district did not abuse its discretion in finding, by a preponderance of the evidence, that Galindo and Alvarez were involved in the same conspiracy to distribute cocaine. See Solis, 299 F.3d at 443.

Second, Galindo argues that because Ray was arrested the day before the telephone conversation with Alvarez, that conversation did not occur during the course of the conspiracy. We have held that "ordinarily, a person's participation in a conspiracy ends when the person is arrested for his role in the conspiracy." United States v. Arce, 997 F.2d 1123, 1128 (5th Cir. 1993) (internal quotation marks omitted). However, as some courts have explicitly recognized, and the language of Rule 801(d)(2)(E) makes clear, the declarant's statement need not be made to a coconspirator. See United States v. Edmond, 52 F.3d 1080, 1111 (D.C. Cir. 1995); see also United States v. Williamson, 53 F.3d 1500, 1519 (10th Cir. 1995); see also FED. R. EVID. 801(d)(2)(E) (excluding from the hearsay rule "a statement by a coconspirator of a party"). It is enough that the declarant, Alvarez in this case, was Galindo's co-conspirator when the statement was made. The fact that Ray (the person to whom the statement was made) could not have been in the conspiracy by virtue of his arrest is of no consequence. See Williamson, 53 F.3d at 1519. Further, we are satisfied that the statement was made during and in furtherance of the conspiracy because the statement concerned instructions and details relating to a pending drug transaction.

Relatedly, Galindo argues that the admission of Alvarez's statements violated the Confrontation Clause as interpreted by Crawford v. Washington, 541 U.S. 36 (2004). Crawford prohibits admission of "testimonial" statements from a declarant not present at trial without a showing that the declarant is unavailable and that the defendant had the opportunity to cross-examine him. See id. at 68. Crawford does not bar the testimony at issue here because that case considered "statements in furtherance of a conspiracy" to be "not

testimonial." Id. at 56; see United States v. Robinson, 367 F.3d 278, 292 n.20 (5th Cir. 2004) (recognizing, in a post-Crawford case, that statements made during the course of a conspiracy are non-testimonial in nature).

Based on the foregoing, the district court did not abuse its discretion in admitting Ray's testimony. Galindo's related arguments concerning the admissibility of Ray's testimony are without merit and we need not address them here.

## C. Minor Participant Adjustment

Galindo argues that he was entitled to receive a two-level reduction in his offense level under the Guidelines because he was "minor participant" in the crime. See U.S. SENTENCING GUIDELINES MANUAL § 3B1.2(b) (2005). To qualify for this reduction a defendant must be "substantially less culpable than the average participant." Id. cmt. n.3(A). Further, "[a] defendant has the burden of showing that he is entitled to the downward adjustment." United States v. Garcia, 242 F.3d 593, 597 (5th Cir. 2001). The district court denied Galindo's request for this reduction stating that his "role was not minor but actually coextensive with the conduct for which he was held accountable." The court's decision on this issue is reviewed for clear error. Id. at 598.

Galindo claims he is entitled to this reduction because he merely "owned the house where the drugs were kept." This statement is inconsistent with the evidence. The evidence showed that, in addition to residing in the house where the drugs were kept, Galindo's fingerprint was found on a bag of cocaine inside the house. This fact is enough for us to conclude that the district court did not clearly err in refusing to grant the reduction.

## III.

For the reasons stated above, we AFFIRM Galindo's conviction and sentence.

AFFIRMED.