IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 26, 2008

Charles R. Fulbruge III
Clerk

No. 07-51438

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

CHARLES EDWARD THOMAS

Defendant-Appellant

Appeals from the United States District Court
for the Western District of Texas
USDC No. 7:07-CR-108

Before SMITH, WIENER, and HAYNES, Circuit Judges.

WIENER, Circuit Judge:[*]

Defendant-Appellant Charles Edward Thomas challenges his convictions for possession with intent to distribute more than five grams of cocaine base ("crack") on May 1, 2007 and .28 grams on February 28, 2007. Thomas contends that (1) the district court abused its discretion when it admitted evidence of his prior drug convictions under Federal Rule of Evidence 404(b) and when it permitted testimony from a police officer on the correlation between drug distribution and the amount of drugs found on Thomas during the May 1 offense;

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and (2) the evidence adduced at trial is insufficient to support conviction on either count of the indictment. Finding no error, we affirm Thomas's conviction on both counts.

## I. FACTS AND PROCEEDINGS

A. First Count (the May 1, 2007 Offense)

In the first count of the two count indictment, Thomas was charged with possession with intent to distribute five or more grams of crack. Officer Alejandro Jurado of the Odessa Police Department testified that on the morning of May 1, 2007, he saw one man and two women sitting in a vehicle in the parking lot of the MCM Fundome Hotel in Odessa, Texas. Officer Jurado spoke with the driver of the car, who said that he was waiting for a friend named Edward, subsequently identified as the defendant, Charles Edward Thomas.

The occupants of the car did not have a room at the hotel and only the driver had identification. When the woman in the front passenger seat of the car, later identified as Regina Holmes, began to make movements with her foot, Officer Jurado asked her to get out of the car. During questioning, she revealed that the friend for whom they were waiting, Edward, had gone upstairs, although she did not know why. She also pointed out his car, which Officer Jurado recognized as one that he knew Thomas drove from time to time.

While questioning Holmes, Officer Jurado saw Thomas come from around a stairwell in the back of the hotel. Holmes identified Thomas as her friend Edward. At the same time, Officer Jurado noticed Thomas put a flimsy object, or a "baggie," into his pocket. Thomas then approached Officer Jurado, who began to question him. After Thomas refused to provide ID or his name, Officer Jurado attempted to restrain him, but Thomas fled. During the pursuit, Officer Jurado saw Thomas throw "something," which appeared to be a flimsy object, over a fence. Officer Jurado then ordered Thomas to the ground and, after a

brief struggle, subdued him. No drug paraphernalia was found on Thomas's person.

Subsequent investigation of the area where Officer Jurado had seen Thomas fling the flimsy object revealed a bag containing what appeared to Officer Jurado to be large rocks of crack. Testimony from Marissa Silva, a forensic scientist for the Texas Department of Public Safety, identified the contents of the bag as two rocks of crack, one weighing 5.96 grams, the other 6.76 grams.

Officer Jurado also testified that when he looked back to check on his squad car, he saw Holmes throw an object from the place where she was sitting. A subsequent search of the area revealed a crack pipe. Holmes was arrested for possession of drug paraphernalia.

Detective Jesse Garcia of the Odessa Police Department's Narcotics-Vice Unit testified after Officer Jurado. Detective Garcia had responded to the scene at the Fundome on May 1, 2007 to assist Jurado. He testified that Jurado gave him a quantity of what appeared to be narcotics. The government then asked whether, based on Detective Garcia's experience, the quantity of crack was consistent with a distribution amount or with an amount for personal use.[1]

---

[1] Government: "All right. From your knowledge and your training and your interaction on the street with crack cocaine users, do you have a sense about how many grams of crack cocaine a typical user would want to put in a pipe, for example, in order to get high?"
Garcia:     "Yes."
[Defense objection]
Garcia:     "Typically, less than a gram for one use, common use."
. . . .
Government: "From your experience, looking at the amount and how it's put together there, do you have a sense of whether that would typically be an amount that would be distributed, or is it a personal use amount?"
[Defense objection]
Garcia:     "My experience, that seems to be a distribution amount."
Government: "And why do you – what factors do you look to as you look at that
(continued...)

Detective Garcia testified, over objection, that, in his experience, it appeared to be a distribution amount. He based his determination on the fact that the crack rocks were larger than the size typical of personal use.[2]

The government then introduced, over objection, evidence of Thomas's prior convictions for cocaine distribution. The government had given Thomas proper Rule 404(b) notice of its intention to introduce evidence of these convictions at trial, and the court had denied an opposition motion in limine by the defense prior to trial. The trial court also gave the jury a proper limiting instruction on the prior-convictions evidence at the time of the introduction.

B.     Second Count (the February 28, 2007 Offense)

Thomas was charged in the second count of the indictment with possession with intent to distribute .28 grams of crack. Officer Jackie Thompson, formerly of the Odessa Police Department, testified that on the night of February 28, 2007, he and Corporal Michael Anaya were at the Super N motel. Officer Thompson observed Thomas standing at the driver's side of a truck, talking to someone in the truck, and passing something hand to hand. While approaching the truck, Officer Thompson saw Thomas throw some white substance into the truck, which substance the officers thought might be crack. The officers then recovered three small rocks of crack from the area inside the truck where it appeared Thomas had thrown the white substance. Thomas stipulated that the crack recovered weighed .28 grams.

While searching Thomas, Officer Thompson discovered $310 in cash on his person. Thomas did not possess any pay stubs, and he claimed that he had

---

[1] (...continued)

exhibit that would make you think that?"

Garcia:        "Just the amount. The typical user amount would be a small rock. These, of course, are large rocks of crack cocaine."

[2] On cross-examination, Detective Garcia conceded that the amount of drugs seized could also be for personal use.

earned the money by working odd jobs, such as yard work. From the truck, Corporal Anaya recovered a 7-UP can that had been modified in such a way that it could be used to smoke crack. He also testified that while questioning Thomas and the truck's occupants, one of the other individuals attempted to swallow what Corporal Anaya thought was crack.

At the end of the government's case in chief, counsel for Thomas moved for a judgment of acquittal. The district court denied the motion, and, after entry of a stipulation as to the amount of crack involved in the February 28 offense, the defense rested. Defense counsel made another objection to the admissibility of the prior convictions, which was overruled. In giving its jury charge, the trial court repeated its limiting instruction on the use of the evidence of prior convictions. The jury eventually convicted Thomas on both counts. Defense counsel renewed his motion for a judgment of acquittal, which the court again denied. Thomas timely filed a notice of appeal.

## II. ANALYSIS

A. The Federal Rule of Evidence 404(b) Challenge

   1. Standard of Review

We review a decision to admit evidence of prior convictions for abuse of discretion,[3] subject to a harmless error inquiry if abuse is found.[4] The abuse of discretion standard is heightened[5] when evidence is admitted under Federal

---

[3] United States v. Arnold, 467 F.3d 880, 885 (5th Cir. 2006), cert. denied, 127 S. Ct. 2445 (2007).

[4] United States v. Morgan, 505 F.3d 332, 339 (5th Cir. 2007) (per curiam).

[5] United States v. Miller, 520 F.3d 504, 511 (5th Cir. 2008), petition for cert. filed, 77 U.S.L.W. 2001 (U.S. June 24, 2008) (07-11561); United States v. Mitchell, 484 F.3d 762, 774 (5th Cir. 2007), cert. denied, 128 S. Ct. 297 (2007).

Rule of Evidence 404(b) because "[e]vidence in criminal trials must be strictly relevant to the particular offense charged."[6]

   2.   Analysis

Federal Rule of Evidence 404(b) states, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident . . . .

Evidence of prior wrongs must be extrinsic to implicate Rule 404(b).[7] Extrinsic evidence is that which is not "inextricably intertwined with the charged offense, when both acts are part of the same criminal episode, or when the 'other act' was a necessary preliminary step toward the completion of the charged crime."[8] Moreover, the government must provide notice before offering extrinsic evidence of other crimes.[9] Thomas does not contend that the government failed to provide notice, and the government does not claim that

---

[6] United States v. Jackson, 339 F.3d 349, 354 (5th Cir. 2003) (internal quotation marks omitted).

[7] United States v. Crawley, 533 F.3d 349, 353-54 (5th Cir. 2008).

[8] Id. at 354.

[9] FED. R. EVID. 404(b).

Thomas's two prior state convictions for cocaine distribution[10] are intrinsic. Thus, both of these threshold requirements were satisfied.

We conduct our substantive Rule 404(b) inquiry under the two-prong test from United States v. Beechum.[11] "First, it must be determined that the extrinsic evidence is relevant to an issue other than the defendant's character."[12] "Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [Federal Rule of Evidence] 403."[13]

a.  First Prong: Relevancy

The standard used in the first prong's relevancy inquiry is the same as the one used in Federal Rule of Evidence 401, namely, whether the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the

---

[10] It is not possible to tell from the provisions under which Thomas was convicted for his prior state drug crimes, sections 481.112 and 481.115 of the Texas Health and Safety Code, whether he delivered powder cocaine or crack. The judgments from the Texas courts reference "cocaine," but the structure of Texas Health and Safety Code section 481.102(3)(D), which lists cocaine as a substance the possession and delivery of which is criminalized by sections 481.112 and 481.115, includes "a salt, compound, derivative, or preparation of a salt, compound, or derivative" of cocaine as well. Crack would fall within this expansive definition of cocaine.

As the matter is ambiguous, and as interpreting the convictions to be for cocaine and not crack favors Thomas, we presume that the convictions were for distribution of cocaine. It also appears that the November 23, 1993 conviction contains a typographical error as it describes the conviction as being for "Delivery of Cocaine," but cites 481.115, which criminalizes possession, not delivery. In this appeal, however, Thomas does not contest the characterization of his prior convictions as being for delivery.

[11] 582 F.2d 898 (5th Cir. 1978) (en banc); see Crawley, 533 F.3d at 353-54.

[12] Beechum, 582 F.2d at 911; United States v. Sanders, 343 F.3d 511, 518 (5th Cir. 2003).

[13] Beechum, 582 F.2d at 911; United States v. Morgan, 505 F.3d 332, 339 (5th Cir. 2007) (per curiam).

evidence."[14]  We have held that "[t]he mere entry of a not guilty plea in a conspiracy case raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence."[15]  This rule appears to have also been applied in drug cases when intent was at issue.[16]

The amount of time between the extrinsic offense and the offense charged is given a varying weight in the admissibility inquiry,[17] but temporal proximity alone is not usually dispositive.[18]  We have held that a lapse of nine years between a conviction for possession of crack and a subsequent charge of possession of crack with intent to distribute did not render evidence of the prior conviction irrelevant, particularly because the defendant put his knowledge and intent at issue at trial.[19]  We have also admitted evidence of prior convictions for offenses committed as much as fifteen and eighteen years prior to the charged offense.[20]

The crimes with which Thomas was charged here, possession of crack with intent to distribute, required the government to prove that Thomas knowingly

---

[14]  FED. R. EVID. 401; see Beechum, 582 F.2d at 911.

[15]  United States v. Broussard, 80 F.3d 1025, 1040 (5th Cir. 1996).

[16]  See United States v. Arnold, 467 F.3d 880, 885 (5th Cir. 2006), cert. denied, 127 S. Ct. 2445 (2007).

[17]  See United States v. Miller, 520 F.3d 504, 512 (5th Cir. 2008), petition for cert. filed, 77 U.S.L.W. 2001 (U.S. June 24, 2008) (07-11561); United States v. Jimenez, 613 F.2d 1373, 1376 (5th Cir. 1980); United States v. San Martin, 505 F.2d 918, 922-23 (5th Cir. 1974); see also United States v. Garcia, 291 F.3d 127, 138-39 (2d Cir. 2002); United States v. Lynn, 856 F.2d 430, 435 (1st Cir. 1988).

[18]  Arnold, 467 F.3d at 885; Broussard, 80 F.3d at 1040.

[19]  Arnold, 467 F.3d at 885.

[20]  See id.

possessed crack and that he intended to distribute the crack he possessed.[21] By pleading not guilty and submitting the issues of knowledge and intent to examination at trial, Thomas made extrinsic evidence of prior convictions relevant to show such knowledge and intent.[22]

Even if this were not the case, Rule 404(b) clearly contemplates, by its terms, the use of extrinsic offense evidence to prove intent and knowledge. Therefore, the only question under the standard Rule 401 inquiry in Beechum's first prong is whether two prior convictions for cocaine delivery make it more or less likely that Thomas knowingly possessed crack and intended to distribute it this time.[23] His prior convictions certainly help to rule out the possibility that Thomas was unfamiliar with powder cocaine or crack, with the ways in which such drugs are packaged, and with the manner in which they are distributed. This is not a consequence of the "bad character" that a prior cocaine distribution conviction might be thought to represent, but of the fact that it eliminates some alternative explanations, such as ignorance of drugs and the drug trade. Further, "because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense."[24] Thomas's extrinsic prior offenses were crimes for which either knowledge or intent was required.[25] There are, therefore, reasons other than evidence of Thomas's

---

[21] See United States v. Aguilar, 503 F.3d 431, 435 (5th Cir. 2007) (per curiam), cert. denied, 128 S. Ct. 1304 (2008).

[22] Because Thomas's prior convictions were for delivery, not mere use, his citations to United States v. McDonald, 905 F.2d 871, 875 (5th Cir. 1990) and United States v. Hill, 953 F.2d 452,456 (9th Cir. 1991), are inapposite.

[23] As discussed above, the fact that (by assumption) different narcotics are involved does not preclude a finding of relevance. See Broussard, 80 F.3d at 1040.

[24] United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

[25] See TEX. HEALTH & SAFETY CODE §§ 481.112, 481.115 (Vernon 2007).

character why the prior extrinsic offenses make intent and knowledge more likely in the instant case. Accordingly, the prior extrinsic evidence is relevant.

This conclusion accords with a vast number of cases in this circuit. For example, in United States v. Arnold,[26] we determined that a nine-year-old conviction for possession of crack was relevant to a new charge of possession of crack with the intent to distribute it. In United States v. Broussard,[27] we determined that a ten-year-old conviction for conspiring with intent to distribute marijuana was relevant to a charge of possessing cocaine with the intent to distribute it.

b.    Second Prong: Probative Value vs. Undue Prejudice

For purposes of the second Beechum prong, a similarity between the elements of a prior extrinsic offense and the elements of the charged offense may enhance the probative value of the extrinsic evidence.[28] Even the fact that a prior conviction involved different kinds of narcotics than those implicated in the charged act does not render evidence inadmissible.[29] A similarity between the offenses, however, also increases the risk of prejudice; so, when the government adduces strong evidence of intent, extrinsic offense evidence should be more

---

[26] 467 F.3d 880, 885 (5th Cir. 2006), cert. denied, 127 S. Ct. 2445 (2007).

[27] 80 F.3d at 1039-40.

[28] United States v. Bermea, 30 F.3d 1539, 1562 (5th Cir. 1994).

[29] See Broussard, 80 F.3d at 1030, 1040.

readily excluded.[30]  Inversely, when the direct evidence of intent is slight, the probative value of extrinsic evidence is enhanced.[31]

We have frequently held that extrinsic evidence of past drug offenses is "more probative than prejudicial."[32]  This is a consequence of Rule 403, which "tips the balance in favor of the admission of relevant evidence, permitting exclusion only if the evidence's probative value is substantially outweighed by the danger of unfair prejudice."[33]  Finally, limiting instructions by the trial court mitigate the possibility of unfair prejudice,[34] particularly when given immediately after the extrinsic offense evidence is admitted.[35]

The probative value versus unfair prejudice balancing and the Rule 403 inquiries of Beechum's second prong essentially reduce to a prejudice inquiry in this appeal because Thomas has not argued that admission of his prior drug convictions led to "confusion of the issues, or misleading the jury, or . . . undue

---

[30]  Bermea, 30 F.3d at 1562.  We made this clear in United States v. Jackson, 339 F.3d 349, 356 (5th Cir. 2003), when, in analyzing the second of the Beechum prongs, we held that when there is "other substantial evidence going to the issue of intent," extrinsic evidence might be unduly prejudicial.  In that case, however, the defendant had not put intent at issue (arguing instead that he was the wrong man).  Thomas's defense strategy put intent directly at issue.

[31]  United States v. LeBaron, 156 F.3d 621, 625 (5th Cir. 1998).

[32]  United States v. Harris, 932 F.2d 1529, 1534 (5th Cir. 1991); Bermea, 30 F.3d at 1562.

[33]  Bermea, 30 F.3d at 1562.

[34]  United States v. Miller, 520 F.3d 504, 512 (5th Cir. 2008), petition for cert. filed, 77 U.S.L.W. 2001 (U.S. June 24, 2008) (07-11561); United States v. Adair, 436 F.3d 520, 527 (5th Cir. 2006).

[35]  United States v. Broussard, 80 F.3d 1025, 1040 (5th Cir. 1996).

delay, waste of time, or needless presentation of cumulative evidence."[36]  We preface the prejudice inquiry in this case with three observations.[37]

First, we wrote in United States v. Harris that "[a]s to the relative probative value of the evidence, our court has previously held that proof of prior drug activities is more probative than prejudicial."[38]  Second, two limiting instructions were given in the trial of this case, one at the time that the evidence was introduced and another during the charging of the jury; and we have previously held such instructions cure much of any prejudice otherwise attributable to the admission of evidence of prior convictions.[39]  Third, no other "substantial evidence" going to the issue of intent was adduced in this trial, which increases the probative value of extrinsic evidence of similar prior offenses.[40]

As extrinsic evidence of prior drug crimes has been held to be more probative of intent and knowledge than prejudicial, the only serious contention Thomas makes under Beechum's second prong is that his convictions are so old that their probative value was substantially outweighed by their prejudicial

---

[36]  FED. R. EVID. 403.

[37]  A fourth observation, not as important, concerns Thomas's complaints about the references by the government to his prior convictions at closing.  The government in the instant case was careful to ask the jury to think about the convictions as evidence only of intent.  As we conclude that such a use is permitted by Rule 404(b), there is no reason to treat the use of this evidence in closing different from the way we would treat it if it occurred during the government's case in chief.  United States v. Jackson, 339 F.3d 349 (5th Cir. 2003), is not to the contrary. It was the use of the evidence by the government to attack the defendant's character during its opening statement that was problematic.  Id. at 356-57.

[38]  932 F.2d 1529, 1534 (5th Cir. 1991).

[39]  Miller, 520 F.3d at 512; United States v. Adair, 436 F.3d 520, 527 (5th Cir. 2006); United States v. Broussard, 80 F.3d 1025, 1040 (5th Cir. 1996).

[40]  United States v. LeBaron, 156 F.3d 621, 625 (5th Cir. 1998).

effect. The cases Thomas cites for this proposition are inapposite. In United States v. San Martin, we said:

> The test for remoteness need not, and indeed cannot, be reduced to a simple rule of thumb based solely on the number of years that have elapsed between the prior crime and the present offense charged. The better test . . . is whether the prior crime is similar [enough] in nature and in its material elements to have clearly probative value with respect to the intent of the accused at the time of the offense charged.[41]

The prior convictions that we ruled inadmissible in that case clearly lacked probative value: Two were youthful indiscretions that involved the formation of intent in a split second and the third did not include specific intent as a material element.[42]

In contrast, Thomas was in his thirties at the time of his first conviction; and, in contrast to the situation in San Martin that involved an assault on a police officer, here there is no contention by Thomas that, if he formed an intent to distribute the crack at all, he did so in a split second. Even were this not so, we have held, as discussed above, that prior drug crimes are "sufficiently similar in nature" to have "clearly probative value with respect to the intent of the accused." The scale in the central probative/prejudice balancing inquiry tips in favor of admitting evidence of prior drug offenses when the defendant is charged with another drug-related crime.

The second case Thomas cites, United States v. Jimenez,[43] involved extrinsic evidence of an offense committed after the crime with which the defendant was charged. There we said: "Although we do not suggest that subsequent extrinsic evidence could never be admitted under rule 404(b), it

---

[41] 505 F.2d 918, 922-23 (5th Cir. 1974) (footnote omitted).

[42] Id.

[43] 613 F.2d 1373, 1376 (5th Cir. 1980).

13

certainly bears substantially less on predisposition than would a prior extrinsic offense."[44]  Unlike the post-hoc extrinsic offenses introduced in Jimenez, those in Thomas's case occurred prior to the crimes of conviction at issue in this appeal.  Additionally, Jimenez's discussion of the time factor is dicta in light of its conclusion that the evidence failed the first prong of the Beechum test.  Finally, unlike here, no limiting instruction was given to the Jimenez jury.

The teachings of other circuits are not to the contrary on the core issue in the probative/prejudice inquiry, viz., the similarity between the offenses.  Thomas cites United States v. Lynn, in which the First Circuit said that "the fact that the prior conviction concerned events that took place six years before the instant offense suggests even more strongly that the two acts were unrelated but for involvement with the same illicit substance."[45]  The focus of the Lynn court, however, was on the dissimilarity between the two offenses.  It concluded its discussion by saying: "Given the dissimilarities between the two episodes, we cannot uphold the district court's finding that the prior crimes evidence was probative . . . ."[46]

The last case cited by Thomas, United States v. Garcia,[47] held that a lapse of twelve years prevented a finding that the defendant knew a particular phone conversation comprised a "coded drug transaction."  There was no evidence from the defendant's prior conviction that he knew drug dealers sometimes communicate in code.  Again, the focus was on the probative value of the prior crime of conviction, with time lapse merely a factor (although given more weight in Garcia than in other cases).  In fact, we have affirmed a district court's

---

[44]  Id.

[45]  856 F.2d 430, 435 (1st Cir. 1988).

[46]  Id.  (emphasis added).

[47]  291 F.3d 127, 138-39 (2d Cir. 2002).

admission of evidence of crimes committed more than twelve years prior to the charged offense.[48]

We are convinced that the district court did not abuse its discretion when it determined that the probative value of Thomas's two prior cocaine distribution convictions outweighed any undue prejudice that they might have conveyed to the jury.[49] Given our conclusion regarding the first Beechum prong, we hold that the evidence of prior crimes was properly admitted. This obviously obviates the need to conduct a harmless error inquiry.

B.     Detective Garcia's Testimony

1.     Standard of Review

The decision of a district court to admit evidence is reviewed for abuse of discretion, subject to a harmless error inquiry.[50]

2.     Analysis

The requirements of the Federal Rules of Evidence governing expert testimony apply only to testimony from a witness tendered as an expert.[51] As Detective Garcia was not tendered as an expert, the strictures of Rule 704(b) are

---

[48] United States v. Arnold, 467 F.3d 880, 885 (5th Cir. 2006) (citing, with apparent approval, admission of a fifteen-year-old conviction in a drug case), cert. denied, 127 S. Ct. 2445 (2007).

[49] There are, of course, cases in which the prior convictions are so stale that the passage of time itself calls into question their similarity to the charged offense. See, e.g., United States v. San Martin, 505 F.2d 918, 922 (5th Cir. 1974) (noting that the prior crimes "must not be so remote as to be lacking in evidentiary value." (internal quotation marks omitted)). The effect of the lapse of time between crimes on the probative value of the evidence of prior offenses necessarily varies according to the presence and extent of the other factors discussed above. The lopsided distribution in favor of admissibility of almost all the factors except the passage of time in the instant case makes it a poor candidate for any more elaborate discussion of the issue.

[50] United States v. Williams, 957 F.2d 1238, 1240-41 (5th Cir. 1992).

[51] United States v. Allard, 464 F.3d 529, 533 (5th Cir. 2006).

15

inapplicable.[52]  Therefore, under Rule 704(a), his testimony could "embrace an ultimate issue to be decided by the trier of fact," such as whether Thomas intended to distribute the crack he possessed on May 1, 2007.

Nevertheless, Detective Garcia's testimony was opinion testimony, albeit lay opinion testimony, so it must satisfy the requirements of Federal Rule of Evidence 701.  Specifically, it must be "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[53]

Thomas does not contend that Detective Garcia's testimony is an impermissible lay opinion either because it is unhelpful or because it deals with specialized knowledge within the scope of Rule 702.  Rather, he contends that the testimony is not rationally based on Detective Garcia's perceptions.  This argument is meritless.  The record amply supports Detective Garcia's first-hand knowledge of the amounts of crack consumed by users.[54]  Although Thomas cites United States v. Garcia, and although that case may well stand for the proposition that a lay witness cannot offer opinion testimony as to why a

---

[52] United States v. Ibarra, 493 F.3d 526, 532 (5th Cir. 2007), cited by Thomas for the proposition that a particular phrasing of expert testimony by a police officer in a criminal case may transgress Rule 704(b) by embracing an ultimate issue of fact, and United States v. Speer, 30 F.3d 605, 609-10 (5th Cir. 1994), cited by the government for the proposition that an expert witness such as a DEA agent may testify as to whether an amount of drugs is "consistent with narcotics trafficking" or consistent "with personal use," are inapplicable as they turn on Rule 704(b).

[53]  FED. R. EVID. 701.

[54] Garcia testified that he had made two or three crack arrests per night for three years, totaling in the hundreds.  He also testified that he had talked to crack users about how they consume it, how much they consume, and other related matters.  He had also had formal training about narcotics in classes and seminars.

defendant might speak about particular matters in code,[55] nothing in Garcia can be read as preventing a witness from offering non-expert opinion testimony about patterns of conduct with which he has extensive first-hand experience (e.g., the frequency with which a specific amount of a given drug is, as an empirical matter, associated with distribution rather than personal use). Had Detective Garcia testified as to why Thomas might have been in possession of this particular quantity of crack or about what Thomas intended to do with it, the analysis under Garcia might be different. But Detective Garcia offered his opinion about a theoretically ascertainable empirical fact, which was rationally connected to his first-hand observations.

On this record, the district court did not abuse its discretion when it allowed Detective Garcia to testify about the concordance between distribution quantities and the amount of crack Thomas possessed during the May 1 offense.

C.    Sufficiency of the Evidence

1.    Standard of Review

Thomas timely moved for a judgment of acquittal on both counts. Such a motion challenges the sufficiency of the evidence. As that motion preserved the sufficiency-of-the-evidence issue for appellate review, we review the denial of the motion for acquittal de novo.[56]

Albeit classified as de novo, our sufficiency-of-the-evidence review is "highly deferential to the verdict."[57] We "will affirm . . . if a reasonable trier of fact could conclude . . . the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict

---

[55]    291 F.3d 127, 140-42 (2d Cir. 2002).

[56]    United States v. McDowell, 498 F.3d 308, 312 (5th Cir. 2007).

[57]    United States v. Gulley, 526 F.3d 809, 816 (5th Cir. 2008) (per curiam) (internal quotation marks omitted), petition for cert. filed, 76 U.S.L.W. 2784 (U.S. June 12, 2008) (No. 07-11424).

and drawing all reasonable inferences from the evidence to support the verdict."[58] This standard of review does not depend on whether the evidence presented at trial is direct or circumstantial.[59]

2. Analysis

To be convicted of possession with intent to distribute crack,[60] a violation of 21 U.S.C. § 841(a)(1) (Supp. V 2005), a defendant must knowingly possess the crack, either actually or constructively,[61] and must intend to distribute it.[62] A jury may infer intent to distribute based solely on possession of an amount too large to be used by the person in possession.[63] The Eighth Circuit has held that 9.9 grams of crack "far exceeds the amount attributable to personal use."[64] The Fourth Circuit came to the same conclusion about "thirteen plus" grams.[65] We have held that 19.67 grams, together with a DEA agent's testimony that the amount "was almost surely intended for distribution," created "at least a jury

---

[58] McDowell, 498 F.3d at 312 (alterations in original) (internal quotation marks omitted).

[59] United States v. Bryant, 770 F.2d 1283, 1288 (5th Cir. 1985).

[60] As there is no serious contention that the weight of the crack from the May 1 offense was inaccurately determined, this discussion will treat the May 1 and February 28 offenses as essentially the same crime, with different facts.

[61] United States v. McKnight, 953 F.2d 898, 901 (5th Cir. 1992) ("[A] person has constructive possession if he knowingly has ownership, dominion, or control over the contraband itself or over the premises in which the contraband is located. Constructive possession need not be exclusive, it may be joint with others, and it may be proven with circumstantial evidence. However, more evidence than mere physical proximity of the defendant . . . is required." (internal citations and footnote omitted)).

[62] United States v. Aguilar, 503 F.3d 431, 434-35 (5th Cir. 2007) (per curiam) (citing United States v. Mata, 491 F.3d 237, 242 (5th Cir. 2007)), cert. denied, 128 S. Ct. 1304 (2008).

[63] United States v. Kates, 174 F.3d 580, 582 (5th Cir. 1999) (per curiam).

[64] United States v. Smith, 91 F.3d 1199, 1201 (8th Cir. 1996).

[65] United States v. Bell, 954 F.2d 232, 235 (4th Cir. 1992), overruled on other grounds, United States v. Burgos, 94 F.3d 849 (4th Cir. 1996) (en banc).

question regarding intent to distribute."[66] Nevertheless, "[p]ossession of a small quantity of illegal drugs consistent with personal use does not support an inference of intent to distribute in the absence of other evidence, such as drug paraphernalia, guns, or large quantities of cash."[67]

"The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence."[68] "If, however, the evidence gives equal or nearly equal circumstantial support to a theory of guilt and to a theory of innocence, [this court] will reverse the conviction, as under these circumstances a reasonable jury must necessarily entertain a reasonable doubt."[69] It is proper for fact finders to "use their common sense and evaluate the facts in light of their common knowledge of the natural tendencies and inclinations of human beings."[70]

In United States v. Hunt, we reversed a conviction in which nothing but the quantity of crack possessed supported a finding of intent to distribute.[71] We held in Hunt that, alone, evidence of possessing 7.998 grams of crack is insufficient, as a matter of law, to support a finding of intent to distribute. The only other evidence in Hunt to support intent to distribute included a razor blade, blunts, a gun, and the absence of smoking pipes or other such use instruments. We concluded that this evidence was also consistent with personal

---

[66]  Kates, 174 F.3d at 583.

[67]  Id. at 582.

[68]  United States v. Fuchs, 467 F.3d 889, 904 (5th Cir. 2006) (internal quotation marks omitted), cert. denied, 127 S. Ct. 1502 (2007).

[69]  United States v. Hunt, 129 F.3d 739, 742 (5th Cir. 1997).

[70]  United States v. Ayala, 887 F.2d 62, 67 (5th Cir. 1989) (internal quotation marks omitted).

[71]  129 F.3d at 742-44.

use and determined that a reasonable jury could not have found that the defendant intended to distribute the crack beyond a reasonable doubt. We have also held, however, that there is no specific minimum amount of a drug that is required to establish an inference of an intent to distribute.[72]

### a. Possession - May 1 Offense

If all of Officer Jurado's testimony were believed, as it must be for this variety of highly deferential review, he saw Thomas with a flimsy baggie; he saw Thomas flee; during the chase, he saw Thomas throw a flimsy object; a subsequent search, shortly after the chase, of the area where Officer Jurado saw Thomas throw the flimsy object turned up a flimsy object, a bag; and the bag contained 12.71 grams of crack. A reasonable trier of fact could conclude from this evidence that Thomas had the crack in a bag in his pocket during the chase and that he threw it over a fence in an attempt to prevent Officer Jurado from discovering it. This is sufficient evidence to demonstrate actual possession by Thomas before and during the chase.

The Eighth Circuit's case cited by Thomas, United States v. Townley,[73] is not to the contrary. There, no cocaine was found in the defendant's apartment, and the only connection between the defendant and the owner of the apartment where the cocaine was found was a picture and some testimony that they knew each other. Because the defendant did not have actual possession of the cocaine, the court would have had to determine that he had constructive possession over the contraband to affirm his conviction. The defendant did not have "ownership, dominion, or control over the contraband itself or over the premises in which the

---

[72] United States v. Majors, 328 F.3d 791, 796 (5th Cir. 2003) (per curiam).

[73] 942 F.2d 1324, 1325 (8th Cir. 1991).

contraband [was] located,"[74] and therefore did not have constructive possession.[75] In this case, by contrast, Thomas's possession was actual. Assuming the jury believed Officer Jurado, Thomas actually possessed the crack until he threw it away, likely in an attempt to hide it or at least to terminate his actual possession.

b.     Intent to Distribute - May 1 Offense

There is less, but nevertheless sufficient, evidence that Thomas intended to distribute the crack. No drug paraphernalia was found on Thomas, but one of the women waiting for him in a car in the hotel parking lot had a crack pipe. While in possession of a large quantity of crack, Thomas approached the car in which the woman was waiting for him. Even though it is not impossible that the quantity possessed by Thomas could have been for his personal use, he had been convicted previously for delivery of cocaine, which, as discussed above, is probative of intent.

Taken in the light most favorable to the verdict, a reasonable jury could have concluded beyond a reasonable doubt that a defendant (1) who was twice before convicted of cocaine delivery and (2) who approached a car in which another person was waiting for him, (3) which other person was in possession of a crack pipe, but the defendant was not, and (4) the defendant was in possession of an amount of crack greater than amounts we have determined to be legally inadequate and within the range of amounts determined by this and other courts to be evidence of intent to distribute, intended to distribute the crack. Accordingly, there is sufficient evidence to support Thomas's conviction in count one of the indictment.

c.     Possession - February 28 Offense

---

[74]  United States v. McKnight, 953 F.2d 898, 901 (5th Cir. 1992).

[75]  Townley, 942 F.2d at 1327.

The evidence, viewed in the light most favorable to the verdict, permits a reasonable trier of fact to conclude beyond a reasonable doubt that Thomas possessed crack on February 1, 2007. If Officer Thompson is believed (and this standard of review requires the court to credit his testimony), Thomas threw something white, which from a distance looked like it might be crack, into a truck in which crack was immediately discovered in the general vicinity where Thomas had just thrown the white "something."

### d. Intent to Distribute - February 28 Offense

Thomas's prior convictions for cocaine distribution are probative of his intent to distribute on February 28, just as they are for the May 1 offense. The case for intent otherwise is even clearer, as Thomas was seen at the truck talking to passengers who were in possession of a device for smoking crack, and he threw the crack he possessed into their truck.

Although the amount of crack involved in the February 28 offense is considerably less than the quantity involved in the May 1 offense, the crack at issue on February 28 had been divided into three rocks, conceivably indicating that it was intended for distribution.[76] Officer Thompson observed a hand-to-hand transaction consistent with a narcotics deal between Thomas and the occupants of the truck. Despite being unemployed and having no supporting evidence of how he came by the money, Thomas possessed $310.[77] If Corporal Anaya's testimony is believed, he observed one of the truck's occupants attempting to swallow some crack. Taken together, these facts are sufficient to

---

[76] Thomas highlights what he perceives to be an inconsistency between being saddled with evidence of intent to distribute for possession of a large quantity and then being saddled with intent to distribute a small quantity. He misses the crucial distinction that, although a large quantity may support a finding of intent to distribute because the quantity is inconsistent with personal use, many small parcels of drugs support a finding of intent to distribute because their packaging is inconsistent with personal use.

[77] This amount probably does not qualify as the "large quantities of cash" that we have previously identified as an indicium of intent to distribute.

permit a reasonable trier of fact to conclude beyond a reasonable doubt that Thomas committed each of the elements of the charged offense, including intent to distribute the crack.

## III. CONCLUSION

For the foregoing reasons, Thomas's convictions by a jury on both counts of the instant indictment are AFFIRMED.